THE STATE v. McKINZIE *et al.*, *Appellants.*

DIVISION TWO.

1. **Criminal Law:** MURDER: AIDING AND ABETTING: INSTRUCTION. On a trial of two defendants, John and Alexander McKinzie, for murder, the evidence tended to show that at the time of the homicide the defendants and deceased were seen scuffling, and that on the following morning Alexander McKinzie was heard to say that he and deceased were contending about politics and he had a cane

The State v. McKinzie.

in his hand and he tapped deceased with it and said, "I didn't have a son that couldn't lick him even down to John." *Held* that the foregoing evidence taken in connection with the relationship of the defendants and the admitted fact that Alexander McKinzie was present at the homicide warranted the court in leaving it to the jury to find whether or not he aided and abetted John in the homicide.

2. ——— : ——— : HEAT OF PASSION. The court on a trial for murder in the first degree should define the meaning of the term "heat of passion," and should also explain to the jury the character of the "heat of passion" which will reduce the homicide to murder in the second degree and manslaughter, where the evidence authorizes instructions on such grades of homicide.

3. ——— : MURDER IN SECOND DEGREE : PRESUMPTION. It is error to instruct the jury that from the simple act of killing with a deadly weapon the law presumes murder in the second degree.

4. ——— : ——— : ———. It is from the act of *intentional* killing with a deadly weapon that murder in the second degree will be presumed.

5. ——— : INSTRUCTION. The instruction given in *State v. Elliott*, 98 Mo. 158, defining murder in the second degree, approved.

6. **Criminal Practice :** INSTRUCTIONS. The repetition of the same theory of the case in instructions expressed in different language condemned.

7. **Criminal Law :** STABBING WITH DEADLY WEAPON : PRESUMPTION. Where one intentionally stabs another in a vital part with a knife which is a deadly weapon, the law will presume death to have been intended.

8. **Criminal Practice :** INSTRUCTIONS. Instructions should not be given on theories of the case not authorized by the evidence.

9. ——— : EVIDENCE : THREATS OF CODEFENDANT. Threats made against the deceased by a defendant as well as his statements concerning the tragedy are admissible in evidence though not made in the presence or hearing of his codefendant, where the defendants are jointly tried, and the jury is instructed that such threats and statements should only affect the defendant making them.

10. ——— : ——— : CROSS-EXAMINATION OF DEFENDANT. Where on a trial for murder defendant testified he did not have or use a cane at the time of the difficulty, it is competent for the state to ask him on cross-examination if immediately preceding the killing he was not sitting in a room adjoining the place of the homicide with his head resting on a cane

11. ———: INSTRUCTIONS ON DIFFERENT GRADES OF HOMICIDE. The evidence in this case examined and *held* to authorize instructions on murder in the first and second degrees and on manslaughter in the third and fourth degrees and on self-defense.

12. **Criminal Law:** MANSLAUGHTER IN FOURTH DEGREE. Manslaughter in the fourth degree may be committed, even though there was an intention to kill.

13. ———: MANSLAUGHTER IN THIRD DEGREE. Where the killing was *involuntary* and in the heat of passion produced by a lawful provocation and without malice and not in self-defense, such killing will be manslaughter in the third degree. (R. S. 1889, sec. 3471.)

*Appeal from Randolph Circuit Court.*—HON. J. A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*B. T. Hardin* for appellants.

(1) The verdict in this case is clearly against all the evidence in the case. While this court will not lightly interfere with the verdict of a jury, even in a criminal case, yet if a verdict is the result of passion or prejudice, rather than of evidence, this court will not sanction it. *State v. Packwood*, 26 Mo. 340; *State v. Brosius*, 39 Mo. 534; *State v. Mansfield*, 41 Mo. 470; *State v. Daubert*, 42 Mo. 239; *State v. Burgdorf*, 53 Mo. 65; *State v. Jaeger*, 66 Mo. 173; *Robinson v. Musser*, 78 Mo. 153; *State v. Castor*, 93 Mo. 252; *State v. Primm*, 98 Mo. 368. (2) The instructions given for the state are nearly all faulty. Number 1, at the last, is wrong for the reason that there is not a word of testimony that defendant, Alexander McKinzie, was present "aiding and assisting in the act" of cutting Emery. The same objection is raised to instructions, numbered 2 and 3. Number 4 is faulty in not defining "heat of passion." The court should not have used this expression in an instruction without explaining its technical meaning. *State v. Andrews*, 76 Mo. 102. Number 5 is

not the law. The law does not presume it to be murder in the second degree, "from the simple act of killing with a deadly weapon." The vice in that instruction caused the jury to convict of murder in the second degree. It is the intentional killing with a deadly weapon from which the law presumes murder in the second degree. To constitute that crime the killing must always be intentional. *State v. Elliott*, 98 Mo. 151; *State v. Mitchell*, 64 Mo. 191, and cases there cited. All the elements of murder in the first degree must exist, except deliberation. The instruction also is faulty in that there is no evidence that Alexander McKinzie did the stabbing. Number 6 is wholly wrong for the absolute want of evidence on which to base it. There is not a scintilla of testimony by any witness that the defendants "sought, brought on or voluntarily entered into a difficulty with the deceased." *State v. Tabor*, 95 Mo. 586; *State v. Herrell*, 97 Mo. 105; *State v. Chambers*, 87 Mo. 406. Number 7 is subject to the same criticism. There is not a particle of evidence that Alexander McKinzie "assaulted Emery with a cane," nor that defendant, John McKinzie, "took up the fight." Instructions although asserting correct principles of law, should not be given where there is no evidence on which to base them. They simply prejudice and mislead the jury. *State v. Chambers*, 87 Mo. 406. Number 8 has the same vice. There is absolutely no testimony in the case that defendants "provoked the difficulty or began a quarrel." Number 9 is faulty in connecting Alexander McKinzie with the stabbing when the evidence is that John McKinzie only did it, and he only could have had the intent. Number 10 is faulty in leaving out two elements of the crime charged, the will and the malice. ( 3 ) The court erred in refusing the admission of the records of the convictions of the deceased for assaults with intent to kill, they being offered for the purpose of establishing the dangerous character of the deceased. ( 4 ) The court erred in

allowing the state's attorney, over the objections of defendants, to cross-examine them about matters not referred to in their direct testimony. *State v. Patterson*, 88 Mo. 88 ; *State v. Palmer*, 88 Mo. 568; *State v. Bulla*, 89 Mo. 595 ; *State v. Taylor*, 98 Mo. 244. ( 5 ) The court below should have instructed for manslaughter. It was the duty of the court to give all necessary instructions whether asked to do so or not. *State v. Jones*, 61 Mo. 232–236 ; *State v. Branstetter*, 65 Mo. 149 ; *State v. Banks*, 73 Mo. 592 ; *State v. Robinson*, 73 Mo. 306 ; *State v. Palmer*, 88 Mo. 568 ; *State v. Barham*, 82 Mo. 67 ; *State v. Wensell*, 98 Mo. 137. The evidence in the case shows that the defendants and deceased were perfectly friendly when they passed through the back door of the saloon. The killing was the result of a sudden quarrel. An instruction for manslaughter should have been given under the ruling in *State v. Berkley*, 92 Mo. 41. The defendant's testimony for the purpose of instructing the jury occupied the same footing as that of any other witness. *State v. Palmer*, 88 Mo. 568 ; *State v. Anderson*, 86 Mo. 310 ; *State v. Banks*, 73 Mo. 592. He testified that he "did not intend to kill" Emery. On that testimony he was entitled to an instruction for manslaughter. *State v. Partlow*, 90 Mo. 608 ; *State v. Palmer*, 88 Mo. 568; *State v. Banks*, 73 Mo. 592. The evidence is overwhelming that Emery used violence toward defendant. He assaulted defendant, cut his clothes off of him, and cut him to pieces. On that evidence the court below should have instructed for manslaughter ( *State v. Branstetter*, 65 Mo. 149 ), and the failure to so instruct is a fatal error. *State v. Robinson*, 73 Mo. 306 ; *State v. Banks*, 73 Mo. 592. ( 6 ) For the reason that the evidence adduced at the trial does not show in what county the alleged offense was committed, the judgment must be reversed. *State v. Meyer*, 64 Mo. 190 ; *State v. Miller*, 71 Mo. 89 ; *State v. Hughes*, 71 Mo. 633 ; *State v. McGrath*, 73 Mo. 182 ; *State v. McGinnis*, 74 Mo. 245 ; *State v. Hartnett*, 75

Mo. 251 ; *State v. Burgess*, 75 Mo. 541 ; *State v. Babb*, 76 Mo. 501 ; *State v. Hughes*, 82 Mo. 86 ; *State v. Young*, 99 Mo. 284.

*John M. Wood*, Attorney General, for the State.

(1) The indictment properly charges the offense. *State v. Dalton*, 27 Mo. 14 ; *State v. Blan*, 69 Mo. 317 ; *State v. Snell*, 78 Mo. 240 ; *State v. Ramsey*, 82 Mo. 133. (2) It was competent to ask Alexander McKinzie on cross-examination " if he was not sitting in the saloon with his head on a cane," he having testified in chief that he did not have a cane the night of the killing. (3) As the defendants were not convicted of murder in the first degree, the correctness of instructions thereon becomes unimportant. *State v. Wilson*, 98 Mo. 440. (4) The second instruction for the state properly declared the law as to murder in the second degree and the presumptions arising from the use of a deadly weapon. *State v. Wilson*, 98 Mo. 440 ; *State v. Stephens*, 96 Mo. 637 ; *State v. Tabor*, 95 Mo. 585 ; *State v. Lundgraf*, 95 Mo. 104 ; *State v. Gee*, 85 Mo. 645. (5) The third instruction properly declared the law as to murder in the second degree and the responsibility of an aider and abettor. *State v. Miller*, 100 Mo. 606 ; *State v. Hollenscheit*, 61 Mo. 302. (6) From the act of killing with a deadly weapon the law presumes murder in the second degree. *State v. Tabor*, 95 Mo. 585 ; *State v. Gassert*, 65 Mo. 352. (7) Under the evidence, the killing was either murder in the first or second degree or done in self-defense, and the court committed no error in requiring the jury to find the defendant guilty of either murder in the first or second degree, or to acquit him on the ground of self-defense. If the. killing was committed under the circumstances shown by the state's witnesses, it was murder ; if as testified to by defendants, it was done in self-defense. *State v. Sneed*, 91

Mo. 552; *State v. Wilson*, 88 Mo. 13; *State v. Starr*, 38
Mo. 272; *State v. Anderson*, 86 Mo. 309; s. c., 89 Mo.
312.

THOMAS, J.—The defendants were tried in the Ran-
dolph circuit court at Moberly in June, 1890, for the
killing of John Emery. They were both found guilty
of murder of the second degree, John McKinzie being
sentenced to the penitentiary for fifty-two years and
Alexander McKinzie for ten, and the case is here on
appeal. Defendants, through their counsel, contend
that the court below erred in its instructions to the
jury; in excluding competent and admitting incompe-
tent evidence; in permitting the prosecuting attorney to
cross-examine defendants as to matters not referred to
by them in their examination in chief; in not granting
a new trial on account of the separation of the jury; in
not instructing the jury in regard to manslaughter, and
in not granting a new trial because the venue was not
proved.

I. Defendant's counsel contends that there was
*no evidence* justifying the court in instructing the
jurors that they might find defendant, Alexander
McKinzie, guilty of the crime of murder of the first or
second degree, as an aider and abettor of John McKinzie
in the commission of the homicide; indeed, that *all* the
evidence shows that he did not aid or abet John in the
homicidal act. We do not think this contention sus-
tained by the record. Thomas O'Brien testified that he
saw the defendants and the deceased scuffling, and Mrs.
Owens swore that the next morning after the homicide
she heard Alexander McKinzie say that he and the
deceased were contending about politics, and he had a
cane in his hand and he tapped him with that and
said: "I didn't have a son that couldn't lick him,
even down to John." We think the testimony of
O'Brien and Mrs. Owens, taken in connection with the
relationship existing between defendants and the con-
ceded fact that Alexander was present, justified the

court in leaving it to the jury to say by their verdict whether he aided and abetted John in the homicide or not.

II.   The court defined deliberation thus : Deliberation means in a cool state of the blood, and not in a heat of passion." The contention is that this definition does not go far enough, and that it ought to have informed the jury what "a heat of passion" is. We think this point well taken. Deliberation, however, being an element of murder of the first degree only, and the defendants having been convicted of murder of the second degree this would not be reversible error, but, as the defendants can be tried again for murder of the first degree, it is important for us to notice it. The court ought to define that "heat of passion" produced by a just cause of provocation which will reduce the homicide to murder in the second degree, as also that "heat of passion" produced by a lawful provocation which will reduce it to manslaughter, as we hold that the court ought to instruct on these grades of the offense at the next trial.

III.   The defendants' counsel contends again that the court erred in its definition of murder of the second degree. The instructions in regard to this grade of homicide, given by the court, are as follows :

" 2.   If you believe and find from the evidence in this cause beyond a reasonable doubt, that the defendants at the county of Randolph, and in the state of Missouri, on or about the eighth day of September, 1889, wilfully, premeditatedly and with malice aforethought, but without deliberation, cut and stabbed with a knife, and that said knife was a deadly weapon, and, by cutting and stabbing, mortally wounded John Emery, and that said John Emery died at said Randolph county of said mortal wound within a year after said cutting and stabbing, then you should find defendants guilty of murder in the second degree ; and if you further believe and find from the evidence in this cause that defendants

intentionally stabbed and mortally wounded deceased with a knife, and that said knife was a deadly weapon, then the law presumes that the killing was murder in the second degree in absence of proof to the contrary, and it devolves upon defendants to adduce evidence to meet or repel that presumption on the part of the state."

"5. The jury are instructed that from the simple act of killing with a deadly weapon the law presumes it to be murder in the second degree. If the defendants killed Emery by stabbing him with a knife then the law presumes the defendants guilty of murder in the second degree in the absence of proof to the contrary."

We concede that apparently some expressions used in the earlier opinions of this court would seem to justify the giving of instruction, numbered 5. Judge HENRY in the case of *State v. Gassert*, 65 Mo. 352, uses this emphatic language: "It has so often been decided by this court that, from the simple act of killing, the law presumes murder in the second degree, that it is no longer an open question in this state. whatever doubts may have been formerly expressed on the subject." He then quotes several cases to sustain the doctrine announced. In the same case, however, he, speaking for himself alone, goes on to dissent from that view and then adds: "We think it equally well settled by the adjudged cases in this state that an intention to kill is one of the elements of murder in the second degree." It must be observed that Judge HENRY omits from the first proposition quoted both wilfulness and the use of a deadly weapon, and hence we must infer from the whole opinion taken altogether, that he meant to announce the doctrine that from the simple act of an *intentional* killing with a deadly weapon the law presumed murder of the second degree. So we take it that even the earlier cases do not teach the doctrine contained in instruction, numbered 5. Be that as it may, however,

we feel satisfied that all the cases, from the *State v. Wieners*, 66 Mo. 13, decided in 1877, to this time, hold that "from the simple act of killing with a deadly weapon" no presumption of law arises that the killing is murder of the second degree.

The court in this case told the jury in instruction, numbered 2, that if defendants intentionally, premeditatedly and of their malice aforethought stabbed and killed deceased they were guilty of murder of the second degree, and then added in instruction, numbered 5, that, "from the simple act of killing with a deadly the weapon, the law presumes" it was done intentionally, premeditatedly and of malice aforethought, for that is what the instruction means if it means anything. The court told the jury explicitly that they must find defendants intentionally, premeditatedly and of their malice aforethought stabbed and killed deceased in order to convict them of murder of the second degree and then told them that, from "the simple act of killing, the *law* presumed that 'it was murder of the second degree," that is to say, if they found the defendants killed deceased with a deadly weapon they might presume, indeed the *law* required them to presume, that they stabbed and killed him intentionally and of their malice aforethought.

This the court should not have done. Both instructions, numbered 2 and 5, should not have been given. If they were intended to announce the *same* doctrine, then but one was necessary; if they were intended to announce distinct doctrines, then they tended to confuse and mislead the jury, and hence for that reason both should not have been given. Instructions that shade into and overlap each other are very objectionable and ought not to be tolerated. Instructions taken as a whole ought to place before the triers of the facts all the hypotheses of the case as presented by the evidence, but a *single* theory should not be repeated in

two or more forms. Instructions that repeat the same theory in different language and phraseology do not instruct, but tend to confuse and mislead. We hold that instruction, numbered 2, declares the law correctly. It is almost a literal copy of the one given on the same subject, and received the sanction of this court, in *State v. Elliott*, 98 Mo. 158. This instruction with instruction, numbered 9, modified as required in this opinion, will present the issue as to murder of the second degree fairly before the jury.

As to the repetition of instructions on the same point we will state that in this case the court gave one instruction at the instance of the state, and eight at the instance of defendants, on the subject of the burden of proof, and reasonable doubt, each one couched in *different* language. These nine instructions must have produced in the minds of the jury a reasonable doubt as to what a reasonable doubt in legal contemplation is. The law as to the burden of proof and reasonable doubt ought to be couched in plain and concise language in a single instruction.

IV. Another contention of defendants is that the court ought not to have given instruction, numbered 9, at the instance of the state, which is as follows :

"9. The jury are instructed that the intent with which a person does an act is presumed to be that which naturally results from such act, and if you believe from the evidence that defendants stabbed John Emery at the time and place charged, with a knife, then the law presumes from the use of such knife that the defendants intended to kill said John Emery."

The language of this instruction is too general. It cannot be said as a matter of law that a party intends to kill because he stabs another with a knife. If he intentionally stabs another in a vital part with a knife, and the knife is a deadly weapon, then the law is that he is presumed to have intended death. These elements ought to have been embodied in that instruction.

V.   We find no evidence in the record before us justifying the giving of instruction, numbered 7, on the part of the state, which is as follows :

"7.   If you believe and find from the evidence that defendant, Alexander McKinzie, assaulted Emery with a cane for the purpose of punishing him for insulting words that Emery had used toward him, and at a time when he had no reasonable cause to apprehend immediate and impending danger of harm about to fall upon him from the hands of Emery, and that the defendant, John McKinzie, took up the fight or assault, and stabbed and killed Emery, then the defendants were the aggressors and cannot justify the killing on the ground of self-defense."

All the court was authorized to do in this case was to leave it to the jury to say whether Alexander aided and abetted John in the homicide and this should have been done in general terms.   We fail to find any evidence in the record that Alexander " assaulted Emery with a cane for the purpose of punishing him for insulting words Emery had used toward him,   *   *   *   and that John McKinzie took up the fight," and for that reason if no other this instruction should have been refused.

VI.   Nor do we believe the evidence in the case authorized the court to instruct the jury that if defendants brought on the difficulty or voluntarily entered into it they could not invoke the right of self-defense, and hence instructions, numbered 6 and 8, ought not to have been given.   Here again we find the same fault we referred to above, of *double* instructions upon a single point, couched in different language.   In this instance both ought to have been refused.

VII.   The state was allowed to prove, over the objections of defendants, threats made by Alexander McKinzie against deceased as well as statements made by Alexander as to his connection with the difficulty, not in the presence or hearing of John McKinzie.

There was no error in this, they being tried jointly, and the court having told the jury in its instructions that these threats and statements should not be considered by them so far as John was concerned.

VIII. The evidence showed that defendants and deceased were at Jones' saloon about midnight and, when informed that it was closing up time, they (the two defendants and deceased) went out of a back door of the saloon into a summer house near by, where the difficulty occurred, and the stabbing was done. Defendant, Alexander McKinzie, was sworn as a witness and testified in chief that he had no cane with him at the time, nor did he strike deceased with a cane. On cross-examination he was asked this question. " Q. Were you sitting in the saloon there with your head down on a cane?" The defendants' counsel objected to this question upon the ground that he had asked the witness about what occurred after he got out of the saloon and not about what happened in the saloon, and, therefore, that this question was in regard to a matter not referred to in the examination in chief. This objection was overruled and this is urged as error. This point is not tenable. Defendant was asked about his having a cane with him and using it in the fatal difficulty. His possession and use of the cane were the matters referred to in the examination in chief, and the state had a right to examine him fully as to his possession and use of a cane on the occasion of the homicide. We find no merit whatever in the objection to the cross-examination of John McKinzie.

IX. We have carefully examined the evidence in this case, and we believe the court below ought to have instructed the jury in regard to murder of the first and second degrees and manslaughter of the third and fourth degrees and self-defense. In this connection we will simply add that defendants may be guilty of manslaughter of the fourth degree, even though they intended to kill. If they acted without malice and in

a heat of passion and not in self-defense they were guilty of manslaughter of the fourth degree, even though they wilfully killed deceased. R. S. 1889, sec. 3477; *State v. Edwards*, 70 Mo. 480 ; *State v. Watson*, 95 Mo. 411.

If the killing was involuntary and in a heat of passion, produced by a lawful provocation and without malice, and not in self-defense, then it is manslaughter of the third degree under section 3471, Revised Statutes, 1889. *State v. Thomas*, 78 Mo. 327.

We do not deem it necessary to decide whether the venue was proved or not, nor whether the jurors were permitted to separate to the injury of defendants. These alleged errors can be avoided at the next trial.

For the errors herein pointed out the cause is reversed and remanded for new trial. All concur.