McAtee v. Valandingham.

EIDITH McATEE, Defendant in Error, v. OLIVER VALANDINGHAM, Plaintiff in Error.

St. Louis Court of Appeals, April 29, 1898.

1. **Instructions**: PLEADING AND EVIDENCE. Instructions should be predicated upon both the pleadings and evidence, and not upon the pleadings alone.

2. ———: ———. An instruction should not be given where there is no evidence upon which to base it, nor should an instruction be hypothecated on any fact of which there is no evidence.

3. **Slander**: FAILURE OF PLAINTIFF TO EXPLAIN ANY FACTS IN CASE: PRESUMPTION: TRUTH IS A COMPLETE DEFENSE TO THIS ACTION.. Where in a case the gravamen of the charge of slander is the statement made by defendant that plaintiff being a female school teacher borrowed from him a certain lewd and obscene book and kept it for months, the imputation of immorality arises from the fact that she borrowed and kept the book for such a length of time as to have enabled her to ascertain the nature of its contents, and after learning of its immoral character continued to hold on to it. And when the evidence all tends to show that she borrowed the book in question and so retained it without any attempt on the part of her, the plaintiff, to contradict or explain her conduct, the court should have sustained a demurrer to the evidence, if asked; for the truth is a complete defense to this kind of action. Sec. 14, art. 11, Constitution.

4. **Testimony.** Testimony foreign to anything stated in the pleadings is inadmissible for any purpose.

*Appeal from the Marion Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED.

R. B. BUSTOW for plaintiff in error.

The words charged to have been spoken constitute no slander. They are not slanderous and could

not be so construed, except by a morbid imagination, one that concluded no young woman could be chaste who would read a work that treated on sexual subjects. If giving the book referred to to a young lady was slanderous, then it is slanderous to handle half of the current literature of the day. There was no charge of immorality or unchastity in the words spoken or the act done, but only in the imagination of the hearer, *honi soit qui mal y pense.* The verdict of the jury should have been set aside because it was against the instructions of the court. The verdict is for $500 compensatory damage and none was proven. The plaintiff did not lose her school but was employed to teach the same school the next session, and there is an utter and complete absence of a scintilla of testimony of any actual damage suffered. Damages must be proven and not left to the imagination or conjecture of the jury. The words charged to have been spoken are not actionable *per se*, by any test you may apply to them. The test is, does the law infer damages as being necessarily occasioned by the publication (utterance). Spurlock v. Lombard Co., 59 Mo. App. 225. Only when the words spoken are slanderous *per se* are damages inferable. In the case at bar compensatory damages were charged, but none were proven. The jury found $500 compensatory damages, there being no evidence to support the verdict the court ought to have set it aside. The plaintiff put on the stand all the persons before whom the alleged words were alleged to have been spoken and having failed to make a case, the defendant prays the case may be reversed without remanding.

No brief furnished for defendant in error.

BLAND, P. J.—The amended petition upon which the case was tried stated in substance that at a time

when she was engaged as a teacher of school district number 4, township 58, range 8, in Marion county, the defendant was a young unmarried man residing with his parents in said district, and that within three months of the time before the commission of the grievances complained of he had frequently visited plaintiff and had escorted her on divers occasions to church and social gatherings in the neighborhood and was assiduous in his attentions to the plaintiff; that on June 23, 1895, the defendant, intending to injure and scandalize the plaintiff and to cause it to be believed that she was immodest, unchaste and unfit to teach school, exhibited to one Charles Cramer, then and there a pupil of plaintiff of the age of sixteen years, a certain lewd and obscene pamphlet containing lewd and lascivious pictures of nude men and women, and pretending to treat on various relations to each other of the male and female sexes, how to prevent pregnancy, etc., and while so exhibiting said book willfully and maliciously spoke of and concerning plaintiff, the following false, defamatory and slanderous words, to wit: "She borrowed this (exhibiting and meaning said pamphlet) from me (meaning defendant) eight months ago and has had it ever since. When she said she would leave it at the schoolhouse I thought she was lying, but she left it there;" that defendant afterward exhibited the pamphlet to one Lee Davis and while so exhibiting it spoke the following false and slanderous words, to wit: "This is one of the books (meaning said pamphlet) she got of me (meaning defendant) last October; she has had it over in her school and I just got it back to-day." That afterward and on another occasion, in the presence and hearing of Mrs. Cramer and other persons, all of whom were acquainted with the nature and contents of the pamphlet, the defendant spoke the following false and

STATEMENT.

slanderous words concerning plaintiff, to wit: "She took it (meaning the said book) directly from my hand (meaning defendant's); I never sent it to her;" that on a subsequent occasion the defendant spoke of and concerning plaintiff in the presence and hearing of one Joseph Sams, the following false and slanderous words, to wit: "She borrowed this book (meaning and exhibiting said pamphlet) of me (meaning the defendant) the latter part of last October and has had it over there at her school in her possession until I got it a week or two ago. I brought it over to show you, and I want you to show it to the other patrons of the district. I want them to know what kind of a woman they've got for a teacher."

There were averments of special and punitive damages and a separate prayer for both compensatory and punitive damages. The answer was a general denial, except as to specific admissions. The answer averred the truth of the fact that the plaintiff had borrowed the book of the defendant, and admitted that he had stated to some persons (the names not remembered) that plaintiff had borrowed the book, but averred that such statements were not made in malice or with the purpose or design to injure the plaintiff in her good name. A reply was filed. The issues were tried by a jury, who found a verdict for the plaintiff and assessed her compensatory damages at $500. No punitive damages were given. Within four days after the return of the verdict the defendant filed his motion for new trial and in arrest of judgment, which were by the court overruled and defendant duly appealed.

The book or pamphlet referred to in the pleadings was identified on the trial and introduced in evidence. The title of the book is "Dr. Bate's True Marriage Guide." It is a trashy production, such as its title

EVIDENCE. would indicate. It contains some pictures that are suggestive of lewdness, and pictures showing the formation of the male and female organs of reproduction, and discusses their functions. It has some commonplace advice on marriage and the marital relations, treats of self-abuse, of private diseases, and advertises the ability of the author to prescribe for and cure these diseases "*at long range*." The possession of such a book by a young lady school teacher would certainly tend to degrade her in the estimation of right thinking men and women. The plaintiff did not testify. The testimony of her witnesses was to the effect that she told the defendant, when he inquired of her for his book, that the three books were at the schoolhouse; that defendant procured the key to the schoolhouse and went in company with Charles Cramer to the schoolhouse and found the Bate's Marriage Guide wrapped up in paper with two other books of the defendant in the teacher's desk. Charles Cramer testified that he was with the defendant when the book was found at the schoolhouse; that the defendant said when they found the book that he had loaned it to the plaintiff two or three months prior to that time; that he did not expect to find it at the schoolhouse, and that he thought that the plaintiff had lied about it; that the witness looked at the book, did not remember whether he took it from the hand of defendant, or that the defendant had handed it to him to look at; that the impression on his mind created by what defendant said about loaning the book to plaintiff and the book itself, was unfavorable to the plaintiff. Mrs. Cramer testified that she heard plaintiff tell defendant, when he inquired for his book, that his three books were at the schoolhouse; that in answer to a question propounded by her to the

defendant as to how plaintiff got possession of the book, he said, "I gave her the book from my own hands."

Lee Davis, another witness mentioned in the petition testified that the defendant remarked to him (producing the book) "that is one of the books Miss Eidith had of mine for some time, but he had at length succeeded in getting it; that witness took the book and casually looked at it; that defendant made no remarks about plaintiff further than that he had got his books back.

Joseph Sams, another witness named in the petition as a person in whose presence slanderous words are alleged to have been spoken, testified that defendant told him that the plaintiff had borrowed the book in the fall of 1894; that witness told defendant he had heard so much about the book in the neighborhood that if defendant would bring it and show it to him he might change his opinion; that defendant brought the book and showed it to him and left it with him and told him he could show it to whom he pleased; that defendant afterward wrote the witness the following letter concerning the circulation of said book, to wit:

June 27, '95, INDIAN CREEK, Mo.
*Mr. Joseph Sams, Warren, Mo.:*

After considering the matter I've thought it best not to make too much of a display of that book. You may show it to some of those that are so much concerned in our affairs. I hear she has our school and I would not like to do anything that would defeat her. I was in Monroe yesterday and last night and I saw Mr. McAtee and I was not shot at either. It will only take time for some of her crew to be convinced of a few things. So you may keep the book and show it to those concerned."

That defendant in his first conversation about the book and the plaintiff said the plaintiff was a liar, but always said she was a lady. This witness, over the objections of defendant, was permitted to detail a further conversation with defendant concerning the plaintiff, in which language was used intimating pretty strongly that plaintiff was lewd and unchaste, and that defendant had immoral relations with her. All of the witnesses who testified to having seen the book and having heard from defendant that he had loaned the book to plaintiff stated that these facts created unfavorable impressions on their minds, as to the moral character of the plaintiff. Plaintiff and defendant were both young. The evidence was that up to a short time before defendant repossessed himself of these books, he had been assiduous in his attentions to the plaintiff. There was no evidence of special damage.

At the close of the plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence; this the court refused to give.

Defendant offered no evidence. The court of its own motion gave the following instruction for the plaintiff:

"If the jury find from the evidence that the defendant spoke of and concerning the plaintiff in the presence and hearing of one or more persons the following words, to wit: 'This is one of the books she got of me last October. She has had it over in her school and I just got it back to-day. She took it directly from my hand. I never sent it to her. She borrowed this book of me the latter part of last October, and has had it over there at her school in her possession until I got it a week or two ago. I brought it over to show you, and I want you to show it to the other patrons of the district. I want them to know what kind of a woman they have got for a teacher.' Or that he spoke

INSTRUCTION    enough of the above words and in such a manner and under such circumstances as to cause the person or persons so hearing said words to understand that the defendant thereby intended to charge and did charge that the plaintiff was unchaste or lewd and that by the word 'book' as above mentioned the defendant meant the book which was given in evidence, then you will find for the plaintiff.''

The court refused to give the following instruction asked by defendant:

"The court instructs the jury that if they believe from the evidence in this cause that the plaintiff at any time received the book offered in evidence, to wit, ''Dr. Bate's Marriage Guide,'' from the defendant or had the same in her possession their verdict must be for the defendant.''    To the giving of one and the refusal to give the other of these instructions, defendant saved his exceptions.    In view of the contents of the book, the exhibition of it to the witness by the defendant for their examination, coupled with the statements that he had loaned it to the plaintiff, and that she had it in her possession for a number of months, was calculated to bring her into disrepute, to show that she was morally impure, disqualified by reason of moral degeneracy to follow her vocation, and unworthy of her employment as teacher of a public school.    If these things were done and the words were spoken with reference to her as a school teacher, the slander is actionable *per se* and damages are inferable.    Rummell v. Otis, 60 Mo. 365. The instruction given by the court undertakes to cover the whole case and incorporates the slanderous words alleged in the petition; the fault of the instruction is that it tells the jury, among other things, ''that if they shall find that the defendant used this language, to wit, 'I brought it over to show you, and I want you to

McAtee v. Valandingham.

show it to the other patrons of the district. I want them to know what kind of a woman they have got for teacher,' etc.,'' when there is no evidence whatever that the defendant used this language or any of the words used in this clause. Instructions should be predicated upon both the pleadings and evidence, and not upon the pleadings alone. Bergeman v. R. R., 104 Mo 77; Tyler v. Hall, 106 Mo. 313; R'y v. R. R., 118 Mo. 599. An instruction should not be given where there is no evidence to base it on, nor should an instruction be hypothecated on any fact of which there is no evidence. State v. McKinzie, 102 Mo. 620; Campbell v. Houten, 44 Mo. App. 231; McCarthy v. Fagin, 42 Mo. App. 619. The gravamen of the charge of slander is the statement made by defendant that plaintiff borrowed the book of him and kept it for months, the imputation of immorality arises from the fact that she borrowed and kept the book for such a length of time as to have enabled her to ascertain the nature of its contents, and after learning of its immoral character continued to hold on to it.

*Instructions should be predicated on pleadings and evidence.*

The testimony of her witnesses leaves but little, if any, doubt of the fact that she borrowed the book of defendant and had it in her possession; she stood by and heard these witnesses give this testimony against her, and did not attempt to deny or explain her possession of the book. It must therefore be taken as true that she did at some time borrow the book of the defendant and had it in her possession when he called for it. Payne v. R. R., 136 Mo. 562. In view of this testimony and of this conduct on the part of the plaintiff, the court should have given the instruction asked by the defendant, and might with propriety have sustained his demurrer to the evidence, for the truth is a complete defense to this kind of action. Sec. 14, art.

2, constitution.  The testimony of the witness Sams as to statements made by defendant as to improper personal relations had with the plaintiff should not have been admitted.  This slander was not charged to defendant's account in the petition, nor did it have any direct relation to any .of the slanderous matter stated, and for this reason should have been excluded; it was wholly irrelevant to any issue in the case, and was not admissible for the purpose of proving express malice, for it concerned and related to a matter entirely foreign to any of the matters contained in the petition.  For the errors herein noted, the judgment will be reversed and the cause remanded.  All concur.