[No. 635.   September 1, 1896.]
## TERRITORY OF NEW MEXICO, APPELLEE, V. SOSTENES LUCERO AND JUAN B. ROMERO, APPELLANTS.

CRIMINAL LAW—MURDER—INSTRUCTIONS.—On a murder trial, an instruction that if one of the defendants shot and killed deceased while the other stood by without objecting or protesting, both were guilty of murder in the first degree, which did not even require the jury to find that the nonobjecting defendant knew or suspected the co-defendant's design to kill deceased, nor that he was in a situation to prevent such killing, was prejudicial error, although the verdict was for a conviction of murder in the second degree, the only instruction as to murder in the second degree consisting of a description of that offense following the terms of the statute, and the instructions for murder in the first degree being numerous and failing to correctly state the law.

ID.—INSTRUCTION—JURY QUESTION.—An instruction that if defendants made false statements as to the killing, it should be construed as tending to establish their guilt was an invasion of the province of the jury.

ID.—STATEMENTS OF OFFICERS IN RELATION TO OFFICIAL ACTS—INSTRUCTION.—An instruction that false statements by officers in relation to their official acts should be construed as an aggravation of their offenses, and if knowingly and willfully made, would justify the jury in disregarding the whole of their testimony, was erroneous. It is not only essential that the falsity should be willful, but it must also be in relation to a material fact. The law demands no higher standard for weighing the statements of fact by public officers than other citizens.

ID.—MURDER—MALICE—PRESUMPTION—ONUS—INSTRUCTION.—On a trial on indictment for murder, an instruction to the jury that malice is implied from the fact of killing and that it devolved upon defendants to establish the contrary, was error, especially where the killing was admitted, and the evidence for defendant tended to show that it was done under considerable provocation, after deceased had attempted to escape by slaying his guards.

APPEAL, from a judgment of conviction for murder, from the Fourth Judicial District Court, Mora County.   Reversed and remanded.

The facts are stated in the opinion of the court.

W. B. CHILDERS, H. L. WARREN, and B. M. READ for appellants.

"In a criminal case, the establishment of a prima facie case only does not take away the presumption of defendant's innocence, nor shift the burden of proof. Agletree v. State, 28 Ala. 693; People v. Milgate, 6 Cal. 543; 1 Bouv. Law Dic. 227; 1 Benn. & Heard, Lead. Crim. Cases, 352; 9 Metc. (Mass.) 93; 5 Cush. 296; 2 Gratt. (Va.) 594; 1 Wright (Ohio), 20; 5 Yerg. (Tenn.) 34; 16 Miss. 401.   See, also, State v. Lopez, 15 Nev. 414; People v. Woody, 45 Cal. 289; 6 Green's Criminal Rep. 420; People v. Arnold, 15 Cal. 476; State v. Porter, 34 Iowa, 139; 1 Green's Criminal Rep. 241; Tweedy v. State, 5 Iowa, 533; Dixon v. State, 13 Fla. 636; Dukes v. State, 14 Id. 499; Stathes v. People, 53 N. Y. 176, as applicable to fourteenth instruction, given at request of territory.

JOHN P. VICTORY, solicitor general, and THOMAS B. CATRON for territory.

The definition of reasonable doubt, given in instructions 32 and 33, were proper and accurate, and are approved by the best precedents.   Kerr on Homicide, secs. 519–521, and citations.

As to instruction 14, while there is a species of presumption that the acts of public officials are regular, it can hardly be contended that this presumption extends to such a case as that at bar, where the act was killing, which was no part of the officers duty under the warrant committed to him for execution and return. State v. Rollins, 18 S. E. Rep. (N. C.) 394.

It was incumbent on the officers, as upon every other person similarly situated, the killing having been established, to prove justification, if it existed, and the burden of establishing justification or excuse, and of rebutting the presumption of malice arising from the act of killing, was on defendant. State v. Rollins, supra.

### SUPPLEMENTAL BRIEF FOR TERRITORY.

On reasonable doubt, citing:   State v. McCahill, 33 N. W. Rep. (Iowa) 599;  Spies v. People, 12 N. E. Rep. (Ill.) 865; McMean v. Comm., 9 Atl. Rep. (Pa.) 878; Hopt v. People, 120 U. S. 430;  State v. Elsham, 31. N. W. Rep. (Iowa) 66;  Dunbar v. U. S., 156 U. S. 185.

On burden of proof, citing:   State v. Jones, 3 S. E. Rep. (N. C.) 506;  U. S. v. Crow Dog, 14 N. W. Rep. (Dak.) 437; State v. Welch, 6 S. E. Rep. (S. C.) 894;  State v. Byers, 6 S. E. Rep. (N. C.) 420; People v. McCarthy, 18 N. E. Rep. (N. Y.) 128;  State v. Whitson, 16 S. E. Rep. (N. C.) 332;  Wilkins v. State, 13 S. Rep. (Ala.) 312;  Comm. v. York, 50 Mass. 93; 1 Greenlf. Ev., sec. 14, and notes; Comm. v. Hawkins, 3 Gray, 465;  Comm. v. Webster, 5 Cush. 295;  Vann v. State, 9 S. E. Rep. (Ga.) 945;  2 Stark. Ev. 948, and note 1;  Silvas v. State, 22 Ohio St. 90;  Weaver v. State, 24 Id. 584;  Davis v. State, 25 Id. 369;  Lewis v. State, 15 S. E. Rep. (Ga.) 697;  Territory v. Manton, 19 Pac. Rep. (Mont.) 387;  State v. McIntosh, 18 S. E. Rep. (S. C.) 1033;  Cleveland v. State, 5 S. Rep. (Ala.) 426;  Gibson v. State, 8 S. Rep. 98;  Roden v. State, 12 Id. 419;  Mugler v. Kas., 123 U. S. 623; People v. Callaghan, 6 Pac. Rep. (Utah) 49;  State v. Turner, Wright (Ohio), 20;  Hill's case, 2 Gratt. 594; State v. Hobbs, 17 S. E. Rep. 580;  Vance v. Comm., 19 Id. (Va.) 785;  Meyers v. Comm., Id. 881;  State v. Payne, 10 Wash. 345;  State v. Gassert, 66 Mo. 352;

State v. Evans, 65 Mo. 574; Robertson v. Comm., 20 S. E. Rep. (Va.) 362, and as to presumption of malice see Act 1891, p. 151, sec. 3, and similar statutes discussed in People v. Clough, 32 N. E. Rep. (Mich.) 905.

"Where defendant is convicted of murder in the second degree under a fair charge, he can not complain of an instruction given relative to murder in the first degree." State v. Alfray, 27 S. W. Rep. 1097.

BANTZ, J.—The appellants were indicted at the March term, 1894; of Mora county, for the murder of Juan Antonio Rael, they were tried at the following November term, and found guilty of murder in the second degree, and sentenced to imprisonment for life in the penitentiary. Numerous errors are assigned, but we need notice only those in relation to certain instructions given to the jury, at the request of counsel for the prosecution.

It was claimed by the territory, that the defendants after arresting the deceased under a warrant for murder, pretended that he tried to escape, and so killed him; when in truth the arrest was a mere pretense, and under color of it, the real design of the defendants was to murder the deceased, and that such design was in fact carried out as the result of a deliberately planned conspiracy. The defendants testified in their own behalf, that they in good faith acted as deputies sheriff, and arrested Rael on a warrant for murder, and that Rael, who was known by them to be a dangerous man, after his arrest suddenly drew a pistol from a coat tied to the saddle, and shot at defendant Romero, when he was shot and killed by the defendant Lucero. Under the instructions of the court the proof of conspiracy was not made essential to conviction, and the jury were told they might acquit one defendant and find the other guilty. The presiding judge fairly and correctly instructed the jury as to murder in the first degree, and he defined murder in the second degree in the terms of

the statute; but counsel for the prosecution presented numerous instructions which were given to the jury which did not fairly or correctly state law, and we think were seriously harmful to the defendants.

1. The ninth, tenth, eighteenth, nineteenth, twenty-second and thirty-first of these instructions, given at the request of the prosecution, told the jury in substance that if one of the defendants shot and killed Rael, while the other stood by without objecting or protesting, both were guilty of murder in the first degree. Ordinarily an error in an instruction as to murder in the first degree will not be ground for disturbing a verdict of murder in the second degree; but it may very well happen that instructions as to murder in the second degree, though without error, may be extremely meager, and at the same time there may be a mass of instructions as to murder in the first degree, so involving the guilt of one defendant in that of the other as to cause him great prejudice. In this case the only instruction specified as to murder in the second degree consisted of a description of that offense following the terms of the statute. It seems to us that when the jury are told, as in the case at bar, that the law regards him who stands by without objecting or protesting when a killing is done, as guilty of murder in the first degree, equally with him who fires the shot, then with equal reason it would seem that if the guilt of the one who fired the shot was murder in the second degree, so also would his companion be guilty of murder in the second degree if he stood by without protesting or objecting when the shot was fired. If that result followed in the higher crime why not also the lower one? There is nothing in any instruction which would tend to prevent a conclusion so evident on the part of the jury. The natural tendency of the instruction was to induce the jury to conclude that if Romero stood by without pro-

*MURDER: instructions.*

testing or objecting when Lucero shot Rael, the guilt of Romero became established. The effect of such an instruction is not at all like a misdirection as to the qualities, conditions or elements essential to murder in the first degree, and which do not tend to influence a verdict of guilty in some other degree. The injury which such instructions would naturally cause a defendant is made more apparent by the fact that the confounding of the guilt of Romero in that of Lucero, was not only emphasized by repeated reiteration in the particular we have just mentioned, but also in other particulars hereafter to be mentioned. It can hardly be pretended that the instructions correctly state the law; they did not even require the jury to find that the nonobjecting defendant knew, or even suspected, the codefendants design to kill Rael, nor that he was in a situation to prevent such killing. In certain other instructions, viz.: eighth, ninth, and twenty-second, the jury were told that an arrest made by two persons rendered both guilty of murder, if one of them after the arrest killed the person arrested. The ninth and twenty-second instructions use, it is true, the words "acting together," but these words refer to making the arrest, and not to the killing. If the acting together was really intended to extend to the killing as well as the arrest, then in a case of such gravity the meaning is too loosely expressed, and, moreover, it was not sufficiently full to express the essentials of a common unlawful design. To render two persons responsible for a killing done by one, it is not sufficient to tell the jury that if the defendants acted together and one of them killed, both are equally guilty. Such a direction would be too vague and misleading. But whatever doubt may be entertained as to the meaning of the phrase acting together, the eighth instruction told the jury that both were guilty whether acting pursuant to or without any previous agreement, if after the arrest

one of them killed Rael. "A mere looker-on while a
crime is being committed, who does nothing, and who
neither then or before by any word or act encourages
it, is not punishable though he mentally approves the
crime." 1 Bish. New Crim. L., sec. 204. "A mere
presence or presence combined with a refusal to inter-
fere, or with concealing the fact, or a mere knowledge
that a crime is about to be committed, or a mental
approbation of what is done, while the will contributes
nothing to the doing, will not create crime. In matter
of evidence such facts have a greater or less weight
according to circumstances, but in law there must be
something a little further, as some word or act; or, in
the language of COCKBURN, C. J., spoken, indeed, in a
case where there was no presence, 'one to be a party to
another's crime must incite, or procure, or encourage
the act.'" 1 Bish. New Crim. L., secs. 632–634.
Counsel has strenuously insisted that if the evidence
for the territory was true, defendants were both guilty;
if the evidence of the defendants was true, they were
both innocent; and that it was not an issue as to the
guilt or innocence of one of them, but of both. This
was, no doubt, a fair argument to the jury, but whether
that conclusion was right, was a matter for the jury;
and while they may have believed a part of the testi-
mony for the prosecution, they were under no obliga-
tions to believe all of it, nor were they bound to dis-
believe all of the testimony of both defendants.

2.  The eleventh instruction told the jury, that if
the defendants made false statements as to the killing,
it should be construed as tending to estab-
lish their guilt. This was going beyond
a mere question of law, and it invaded
the province of the jury. A false statement may un-
der some circumstances become highly influential with
the jury, but whether so or not, or in what degree,
depends upon the time, or the circumstances under

INSTRUCTION:
jury question.

which it was made, the particulars or importance of the falsity, whether knowingly uttered, and whether made from a consciousness of guilt or from motives of fear. All of these matters should be weighed by the jury in determining the effect of a false statement, and whether, in what degree, the conclusion of guilt is to be influenced by such falsity, falls entirely within the line of judgment reposed exclusively in the jury; and there is no rule of law requiring the jury to construe a false statement as tending to prove guilt. It is going beyond a direction to consider such falsity, if proved, and if knowingly made in relation to material facts, in connection with all the circumstances in ascertaining some essential element to be found; this instruction directs them to construe the bare fact of falsity a particular way. A presumption of law is a juridical postulate that a particular predicate is universally assignable to a particular subject (Whart. Crim. Ev., sec. 707); but this is quite different from an inference of fact drawn from argument, more or less sound, according to the particular circumstances surrounding it. Hickory v. U. S., 160 U. S. 409.

3. The twelfth instruction told the jury that public officials should be truthful, and that false statements by officers (i. e., defendants) in relation to their official acts should be construed as an aggravation of their offenses, and if knowingly and willfully made, would justify the jury in disregarding the whole of their sworn testimony in the case. In Pacific Gold Company v. Skillicorn, 8 N. M. 8, we held that an instruction which told a jury that they might disregard the whole of the testimony of. a witness who had testified falsely, and which omitted the element of willful falsity, was error. It is not only essential that the falsity should be willful, but it must also be in relation to a material fact. 2 Thomp. Trials, sec.

*STATEMENTS of officers in relation to official acts: instruction.*

2423. The law does not demand a higher standard
for the scrutiny and weighing of statements of fact by
public officers, than other citizens; nor was it right to
intimate that the defendants were guilty of any of-
fenses which could be aggravated by their false state-
ments concerning them.

4.   A much more serious class of errors was com-
mitted in relation to instructions 14, 19, and 24, given
at the request of the prosecution, which
are as follows: "Fourteenth. In this case
there is no presumption in' favor of the
defendants, Juan B. Romero or Sostenes Lucero, or
either of them, but they are to be judged in the same
manner as if they were not officers of the law, and had
done the killing in question, which is admitted, with-
out being armed with a writ or warrant, and after the
killing has been established, which is not denied in
this case, it devolves upon the defendants to establish
that the killing done by them was either excusable or
justifiable, and that there was no malice, express or
implied in so killing."

MURDER: malice: presumption: onus: instruction.

"Nineteenth. If the jury believe that the defend-
ants or either one of them, without the other objecting
or protesting and standing by, shot and killed the
deceased, under such circumstances, then, they would
be guilty of murder in the first degree, unless they
established the fact that they were excusable or justifi-
able by evidence to the satisfaction of the jury."

"Twenty-fourth. The court instructs the jury, that
while it is incumbent upon the prosecution to prove
every material allegation of the indictment as therein
charged, that it is not required that the same shall be
proved in every case literally as charged, such, for
instance, as the date, which may be changed, which is
not required to be proven of the date shown in the
indictment, that if the material allegations of the in-
dictment are substantially proven as charged therein,

the same will be sufficient, that nothing is to be presumed or taken by implication against the defendants, or either of them, until the fact of the killing has been established beyond a reasonable doubt, that then the killing is presumed to be malicious, and it devolves upon the defendants to establish to the contrary.''

Is it true that the law implies malice from the fact of killing upon the trial on an indictment for murder? It is true that a jury would be at liberty to rest their verdict of guilt upon the fact of the killing by the defendant. But this conclusion of fact is quite different from a presumption drawn by law. ''Murder is the unlawful killing of a human being with malice aforethought, either express or implied.'' (Sec. 1, ch. 80, Acts 1891.) It must be (1) a killing and (2) with malice. The killing of a human being does not constitute murder, but, as BLACKSTONE says, ''the grand criterion'' which distinguishes murder from other killing, is that the killing must be with malice aforethought. 4 Black.'s Com. 198. Judge CHRISTIANCY observes, ''to give homicide the legal character of murder all the authorities agree that it must have been perpetrated with malice pretense or aforethought. This malice is just as essential an ingredient of the offense as the act which causes death. Without the concurrence of both, the crime can not exist; and, as every man is presumed to be innocent of the offense of which he is charged until he is proved to be guilty, this presumption must apply equally to both ingredients of the offense, to malice as well as the killing. Hence, though the principle seems to have been sometimes overlooked, the burden of proof as to each rests equally upon the prosecution, though the one may admit and require more proof than the other.'' Maher v. People, 10 Mich. 212. It is true the rule that the law presumes malice from the proof of the killing is sustained by numerous and respectable authority. The leading authority is Com.

v. York, 9 Met. 93; (S. C., 2 Benn. Heard Lead. Crim. Cases, 504). But courts and commentators have, especially of late, denied it as a sound legal principle, and condemned it as an excrescence upon the law. The true rule more accurately stated, and which does not conflict with the presumption of innocence, the burden of proof, nor as to reasonable doubt, we think is, that malice may be implied from the intentional killing, where the jury from the whole case before them, and beyond a reasonable doubt, find the additional fact that no circumstances of justification or excuse appear, and when there are no circumstances mitigating the killing to that of manslaughter. If there is reasonable doubt as to justification there is reasonable doubt as to malice. The evidence of the killing may be considered by the jury together with the whole of the evidence, in ascertaining whether there was malice; but it would be error to tell the jury that the killing alone is presumptive evidence of malice aforethought, as it would allow the jury to find malice, without stopping to inquire whether a considerable provocation appeared, or whether the circumstances were such as to show a wicked and malignant heart, which are essential ingredients of implied malice. In discussing this subject, Mr. WHARTON observes: "We must keep in mind that the doctrine that malice and intent are presumptions of law, to be presumed from the mere fact of killing, belongs, even if correct, to purely speculative jurisprudence, and can not be applied to any case that can possibly arise before the courts." Wharton, Crim. Ev., sec. 737. This is so because in no case does the prosecution limit its proofs to the bare fact of a killing; there is always disclosed some surrounding circumstances, tending to show how and why it was done; it is from the killing and all the circumstances disclosed upon the whole case that the jury determine whether malice has been made out beyond a reasonable doubt. It is true that we hear occa-

sional utterances as in Massachusetts, of the old doctrine that malice is to be presumed from the mere act of killing; but whenever this is done it is followed by the admission that when the facts of killing are proved, then the malice is to be inferred from the facts. Now as the facts of the killing are always proved the idea of abstract malice, being presumed from the abstract killing, has no application to the cases before the court."
Whart. Crim. Ev., secs. 722–738. And Mr. Wharton adds: "Should, however, the judge make the proposition not speculative, but regulative—should he direct the jury that the logical inferences of this class are presumptions of law, and tell them to presume malice from the act of killing, then this would be error."
Whart. Crim. Ev., sec. 738. That is exactly what was done in this case, and indeed the foregoing instructions went even further; they not only told the jury that malice was to be presumed from the killing but that it devolved upon the defendants to establish the contrary. What is implied malice? "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show a wicked and malignant heart." Sec. 3, ch. 80, Acts 1891. Implied malice does not, therefore, arise merely from an intentional killing, but from a killing under such circumstances as that the jury can say, that no considerable provocation appeared, or that all the circumstances show a wicked and malignant heart. In State v. Vaughan, 39 Pac. Rep. 733, the defendant admitted the killing, and claimed self-defense in justification; it was held error to charge that "malice aforethought means an intention to kill." Bigelow, C. J., says: "The fact that the killing was intentional does not necessarily prove that it was done with malice; for an intentional killing may be entirely justifiable, as where it is done in necessary self-defense, or it may be only manslaughter, as where it is done in the heat of passion caused by no

sufficient provocation.    What it is must depend on the manner of the killing, and the surrounding circumstances." And the court in that case points out that inasmuch as the defendant admitted the killing, it was important that the instructions upon this matter should be correct, and that such an instruction was highly prejudicial under the circumstances. Dennison v. State, 13 Ind. 510; State v. McKenzie, 102 Mo. 620; Tremble v. Ty., 3 Wyo. 280 (21 Pac. Rep. 1081); State v. Wingo, 66 Mo. 181; People v. Willett, 36 Hun. 500. The element of implied malice was not merely formal; it involved the real and vital questions contested before the jury in this case. The evidence for the prosecution tended to show that the killing was done without provocation, and was a result of a deliberate purpose, under cover of a pretended arrest and pretended resistance; the evidence for the defense tended to show that the killing was done under circumstances of considerable provocation, after deceased had actually attempted to secure his freedom by slaying his guards. It was for the jury to determine which side spoke the truth. The jury was told that malice was to be implied from the killing, and that the killing by the defendants was established; and therefore the jury were told in effect, that malice was fully proved, while the evidence for the defense went directly to attack the essential element of implied malice as defined in the statute.

It will be remembered that the actual killing was done by one of the defendants, yet the jury were told in the fourteenth instruction that the killing done by the "defendants" was established; the instruction then goes on to say, that it devolves on the defendants to establish that the "killing done by them" was either excusable or justifiable, and that there was no malice express or implied in the killing. Even if it be true that the law imputes malice to him who kills another, the vice running through these instructions is that the

legal presumption is raised against both of the defend-
ants, and it is not confined to the one who fired the
fatal shot; and in all of them the jury were told that
the burden rested upon both defendants, and not
merely upon the one who fired the shot, to prove want
of malice and excuse or justification; in the nineteenth
they were told that justification or excuse must be
established by the defendants, by evidence to the satis-
faction of the jury.

Even though it be true, that the law implies malice
from the simple fact of the killing, and even though
both defendants had actually participated in the kill-
ing, these instructions treat the presumption arising
from the killing as though the burden of proof became
thereby shifted from the prosecution on to the defend-
ants; the presumption of innocence until guilt is
established to the satisfaction of the jury is thus com-
pletely brushed away. The defendants were required
to prove their innocence as to one of the material and
essential elements of the crime of which they were
charged, namely, that the killing was not done with
malice express or implied. In State v. Payne, 39 Pac.
Rep. 157, the Nevada court while holding to the old
doctrine, that malice may be presumed from a killing
done with a deadly weapon, say: "Of course it would
not be proper to instruct the jury that it was incum-
bent upon the defendant to overthrow this presumption
by testimony in his own behalf." When counsel for
the territory drew instruction number 24, in which the
jury were told, that not only was malice to be pre-
sumed, but that it devolved upon the defendants to
show the contrary, he confounded a mere rule of pro-
cedure touching the order of proofs, with the functions
of the jury in weighing the testimony, and applied to
the latter a rule relating merely to the former. Whart.
Crim. Ev., sec. 330–738. The proofs of the prosecu-
tion no doubt made out a prima facie case, amply

strong enough to convict; when the defense introduced evidence in explanation and denial they became actors, but upon the submission of the case it was for the jury to say upon the whole case whether every element was established beyond a reasonable doubt, and if not, to acquit.   The presumption of innocence did not end at any particular period in the proofs; it continued throughout the trial, and did not terminate until, upon the whole case, the jury returned their verdict.  Whart. Crim. Ev., secs. 330–331; Coffin v. U. S., 156 U. S. 432; Davis v. U. S., 160 U. S. 469.  "In a criminal case, the establishment of a prima facie case only does not take away the presumption of a defendant's innocence, nor shift the burden of proof."    Agletree v. State, 28 Ala. 693; 1 Bouv. Dic. 227.   Suppose the defendants had not introduced any testimony, although they were legally entitled to demand that the jury find every element established beyond a reasonable doubt, yet if the instructions like the fourteenth and twenty-fourth were given, it would be tantamount to directing them to find a verdict of guilty, even though the testimony of the prosecution's witnesses may have been such as to leave a reasonable doubt of guilt.   If the proposition announced in these instructions be correct, the proof of the killing would not only raise a presumption of malice, but that presumption would become proof beyond a reasonable doubt as a matter of law, unless the defendant successfully assumed the burden of showing the contrary.   Such a proposition overturns the fundamental principles of the criminal law.   In Chaffee v. U. S., 18 Wall. 516, the jury had been charged that the government need only prove that the defendants were presumptively guilty, and the duty then devolved upon them to establish their innocence, and if they did not, they were guilty beyond a reasonable doubt.   Justice FIELD, speaking for the court, says: "We do not think it at

all necessary to go into any argument to show the error of this instruction. The error is palpable on its statement. All the authorities condemn it. The instruction sets at naught established principles." In Coffin v. U. S., 156 U. S. 432, the jury had been charged that when the prohibited acts were knowingly and intentionally done and their natural and legitimate tendency was to produce injury, the intent to injure is thereby sufficiently established to cast on the accused the burden of showing that their purpose was lawful and their acts legitimate.

The supreme court per Justice White, say, "The error contained in the charge which said substantially that the burden of proof had shifted under the circumstances in the case, and that, therefore, it was incumbent on the accused to show the lawfulness of their acts, was not merely verbal, but was fundamental." While the case of the prosecution made up in part by legal presumptions may be such as to render it expedient for the defense to produce some evidence to qualify, explain or deny the facts from which the presumption is sought to be raised, the burden of proof is not thereby changed; and even if the law permits the jury to infer malice from certain things, it does not require them to do so. People v. Willett, 36 Hun. 500. The presumption of innocence is itself to be considered as evidence in favor of the defendants in every criminal case under a plea of not guilty. Coffin v. U. S., 156 U. S. 432; Davis v. U. S., 160 U. S. 469. Upon this principle it is easy to reconcile the rule that in no case can the judge peremptorily direct the jury to find a defendant guilty of a crime. Sparf v. U. S., 156 U. S. 51. "Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence, nor to disprove the facts necessary to establish the crime of which he is indicted. It is on the prosecution from the be-

ginning to the end of the trial, and applies to every
element necessary to constitute the crime." Davis v.
U. S., 160 U. S. 469. In State v. Wingo, 66 Mo. 364,
the trial court had charged that "if the defendant
Wingo shot and killed Gamble the law presumed
it to be murder in the second degree in the absence of
proof to the contrary, and it devolved upon the defend-
ant to show from the evidence in the cause to the
reasonable satisfaction of the jury that he was guilty of
a less crime, or acted in self defense." The supreme
court held the charge erroneous, saying: "The
defendant is entitled to the benefit of a reasonable
doubt of his guilt on the whole case, not only as to
whether the case made by the state is open to reason-
able doubt, but if the evidence for the state be clear,
and, in the absence of other evidence conclusive, still
if the evidence adduced by the accused, whether it estab-
lishes the facts relied upon by a preponderance of the
evidence, or not, creates a reasonable doubt of his guilt
in the minds of the jury, he is entitled to an acquittal.
At no stage of the trial does he stand asserting his inno-
cence." In the Stokes case, 53 N.Y. 164, after an elaborate
argument upon this subject, it was held that the jury
must be satisfied from the whole evidence of the guilt
of the accused, and it was clear error to charge them
that when the prosecution has made out a prima facie
case and evidence has been introduced tending to show
a defense, that they must convict unless they are satis-
fied of the truth of the defense. "Such a charge," says
the court, "throws the burden upon the prisoner, and
subjects him to conviction though the evidence on his
part may have created a reasonable doubt of his guilt.
Instead of leaving it to them to determine upon the
whole evidence whether his guilt is established beyond
a reasonable doubt, it constrains them to convict unless
they are satisfied that he has proved his innocence."
In State v. Gassert, 65 Mo. 354, Judge HENRY alluded

to the difficulty of reconciling the doctrine contained in such instructions as these with elementary principles, but yielded to the force of precedents in that state; but in State v. McKenzie, 102 Mo. 620, it was repudiated and the earlier cases overruled. See, also, State v. Wingo, supra; State v. Hill, 69 Mo. 453; but in State v. Evans, 121 Mo. 411, it seems to have been restored. In Massachusetts the case of Com. v. York, supra, has been greatly modified if not overruled in Com. v. Pomeroy, reported Whart. Hom. [2 Ed.] 753, appendix, and is so considered by the supreme court of the United States in Davis v. U. S., 160 U. S. 481. See, also, Com. v. Hawkins, 3 Gray, 463; U. S. v. Armstrong, 2 Curt. C. C. 445.

The only case which we have found in this territory which seems to hold that the defendant must prove hisi nnocence of the crime charged, is Trujillo v. Territory, 7 N. M. 44, where it was held that the burden was upon the defendant to prove an alibi, but that ruling is not sustained by sound principle. (Whart. Crim. Ev. 333), and is at variance with the rule laid down in Davis v. U. S., 160 U. S. 469; an alibi, if true, meets and completely overthrows every allegation against the accused in the indictment. 2 Thompson Trials, section 2436. Extrinsic defenses which do not traverse the averments of the indictment, it is perhaps true, must be affirmatively shown by the defense; of this class have been mentioned such as autrefois acquit, license, command of superior officer, etc. Whart. Crim. Ev., sec. 331, et seq. But such matters of provocation, excuse or justification which tend to traverse the element of intent or malice must be weighed by the jury not as a defense, but with all the other evidence in determining whether every essential element of the crime has been established beyond reasonable doubt. Whart. Crim. Ev., sec. 331; State v. Porter, 34 Iowa, 131; State v. Hill, 69 Mo. 451;

People v. Marshall, 44 Pac. Rep. (Cal.) 718; People v. Coughlin, 32 N. W. Rep. 905; Coffin v. U. S.; Davis v. U. S., and Hickory v. U. S., supra.

The court in its own prepared charge fairly and correctly instructed the jury in general terms as to the burden of proof, the presumption of innocence and the necessity of establishing guilt as to every element, including malice, beyond a reasonable doubt, and it is argued that these instructions considered, the defendant was sufficiently protected against those given at the instance of the prosecution. But more than sixty instructions were given to the jury in this case, many of them quite lengthy, and it would hardly be fair to assume that mere abstract propositions would be weighed to the exclusion of those to which we have alluded, which assume to deal with the facts of this particular case, which were specified, which emphasized by repetition, and which were of a nature so harmful to the defendants. In this case the errors were of such character that the probability of injury seems quite manifest. 2 Thomp. Trials, sec. 2407; People v. Casey, 65 Cal. 260. It will not be necessary to notice the other errors assigned as these are sufficient to require the reversal of the cause. The judgment is reversed and the cause remanded for a new trial.

SMITH, C. J., and COLLIER and HAMILTON, J. J., concur.