212 P.2d 425

**APODACA et al. v. VIRAMONTES, Sheriff.**

No. 5246.

Supreme Court of New Mexico.

Dec. 7, 1949.

Harry L. Bigbee, Santa Fe, Filo, M. Sedillo, Belen, for petitioners.

A. L. Zinn, Santa Fe, J. R. Wrinkle, Silver City, Carl P. Dunifon, Silver City, amici curiae for petitioners.

T. K. Campbell, Dist. Atty., Las Cruces, W. C. Whatley, Las Cruces, for respondent.

SADLER, Justice.

Petitioners seek their release from custody through the writ of habeas corpus claiming unlawful detention by Jose M. Viramontes, the sheriff of Dona Ana County, the respondent, after being adjudged in contempt by the Honorable C. Roy Anderson, Judge of the Fifth Judicial District of the State of New Mexico, sitting by designation of the Chief Justice in consolidated cases Nos. 8148 and 8149, pending on the criminal docket of the district court of said county. Each of said cases is entitled "State of New Mexico, plaintiff, v. Dan Sedillo, defendant," the one, case No. 8148, charging the defendant with giving liquor to a female minor, naming her as the same one the defendant was charged to have in his possession for evil purposes in the other case, contrary to the provisions of 1941 Comp. § 61-1012; and the other case, No. 8149, charging the defendant with having in his possession for evil purposes a female minor, naming her, in violation of 1941 Comp. § 41-3909. Both prosecutions are based on indictments returned into open court against said defendant by a grand jury theretofore and then sitting in Dona Ana County.

At the trial of the accused on these indictments, consolidated for purposes of trial, after the jury had been duly impanelled and sworn, each petitioner, in turn, was offered as a witness for the state and duly sworn to tell the truth. The preliminary questions as to name, place of residence and occupation were asked each witness but when the examination began to call for answers that would place him or her in the town of Las Cruces, the place of the offense charged in each indictment, at or near the date thereof, all refused to answer the question propounded upon the same ground, stating it, to-wit:

"I am going to refuse to answer on the ground that my answer might tend to in-

criminate me and ask that I be given my constitutional and statutory privilege and right."

As the questioning of the witness drew closer with each succeeding inquiry to the time and place of the offenses charged, the refusal to answer was repeated with monotonous regularity, the same ground being assigned with each refusal. The jury was excused immediately following the claim of privilege and all proceedings thereafter took place out of the presence of the jury. When concluded, the trial judge announced as to each witness that he would hold the questions asked "might elicit answers from him (or her) that might tend to incriminate him" and that the witness had claimed the constitutional privilege against answering such questions. Whereupon the district attorney, with the acquiescence and approval of the court, offered each witness complete and absolute immunity from prosecution on any charge that might grow out of answers of the witness to any question propounded to him or her. Thereupon, the court admonished the witness to answer the questions propounded and each in turn refusing, and declining to accept the proferred immunity, all were adjudged in contempt and placed in custody pending sentence. There followed this proceeding to secure their release by invoking our original jurisdiction in habeas corpus.

Counsel for petitioners cite a constitutional as well as a statutory provision in support of the claim for an order of discharge from their detention. The constitutional provision, so far as material reads:

"No person shall be compelled to testify against himself in a criminal proceeding, * * *." Const. Art. 2, § 15.

The statute relied on is L. 1880, c. 12, § 5, designated therein as "The Evidence Act," among other things, removing the disability of parties and spouses to serve as witnesses. It reads:

"Nothing herein contained shall render any person compellable to answer any question to criminate himself or to subject him to prosecution for any penalty or crime." 1941 Comp. § 20-110.

The effect of the quoted provisions is to give immunity to a witness against testifying to facts having a tendency to criminate or subject him to prosecution for any crime or imposition of a penalty. Counsel for respondent do not question that this is true. They rely upon the proffer of immunity from prosecution on account of any answers given by the witness, made by the district attorney with the full concurrence and approval of the court, as denying the privilege claimed. If the district attorney and the district court were authorized to extend the immunity offered, there can be no question but that complete and absolute immunity is available to the witness. Hence, he or she may no longer rely upon the privilege to support a refusal to testify.

The decisive question, then, is whether the district attorney and the district court in New Mexico, absent constitutional provision or enabling statute conferring the power, are authorized to grant immunity from prosecution for an offense to which incriminating answers provoked by questions asked will expose the witness.

■ We are compelled to give a negative answer to this inquiry. Indeed, sound reason and logic, as well as the great weight of authority, to be found both in textbooks and in the decided cases, affirm that no such power exists in the district attorney and the district court, either or both, except as placed there by constitutional or statutory language. It is unnecessary to do more in this opinion in proof of the statement made than to give a few references to texts and to cite some of the leading cases. See, 28 R.C.L. 441, § 28, "Witnesses"; 58 Am. Jur. 77, § 93, "Witnesses"; 70 C.J. 732, § 885, "Witnesses"; Id., p. 733, § 886; 3 Jones on Evidence (4th Ed.) 1653, § 888; 4 Nichols Applied Evidence, p. 3708, §§ 61, 62; 8 Wigmore on Evidence (3rd Ed.) 529, § 2284; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, 87 A.L.R. 418; People v. Rockola, 339 Ill. 474, 171 N.E. 559, 69 A.L.R. 852; State ex rel. Benemosky v. Sullivan, Fla., 37 So.2d 907; Temple v. Commonwealth, 75 Va. 892; Ex parte Werner, 46 R.I. 1, 124 A. 195; Karel v. Conlan, 155 Wis. 221, 144 N.W. 266, 49 L.R.A.,N.S., 826.

The author of the text which deals with this section under the proper topical heading in 70 C.J. 732, states:

"Under a statute authorizing the court to grant immunity for certain offenses and to compel a witness to testify thereto, although incriminating himself, *the court is without power to grant immunity for an offense other than those enumerated,* and to compel the witness to testify thereto; unless protected by an *authorized* immunity order, no witness can be required to give testimony which either directly or indirectly *tends to incriminate him or to form a link in a chain of circumstances that might result in punishment for crime.*" (Emphasis ours).

In 3 Jones on Evidence (Civil Cases, 4th Edition) 1652, § 888 the author states:

"If the testimony which is sought to be elicited from the witness cannot incriminate him in the sense that it may result in his conviction of the commission of crime, he may not refuse to testify although his answer may show that he has been guilty of a violation of the criminal law. * * * Likewise, the witness may not invoke the constitutional or statutory provision if he is accorded full and complete immunity from prosecution because of his answer. * * *

"The mere fact that the prosecuting officer has promised him immunity or states in open court that he will not prosecute the witness or file any information against him does not change the rule; the immunity must be something more substantial than the grace or favor of the prosecuting officer."

In 4 Nichols Applied Evidence 3708, § 61, the author discusses the effect of statutory or constitutional grants of immunity from prosecution, as follows:

"Where by statute absolute immunity from prosecution is guaranteed to a witness in regard to anything concerning which he may testify, he may be compelled to testify. So far as specific crimes are concerned, a multitude of statutes have been enacted in more or less recent years expressly granting immunity against prosecution of one giving self-incriminating testimony, and compelling witnesses in prosecutions for particular crimes to testify as to self-criminating facts. In California, a statute so providing as to crimes in general, enacted in 1911, has been repealed. In Oklahoma the constitution grants immunity in certain cases."

In perhaps the most elaborate and well-reasoned discussion of the subject to be found in the reported cases, the then Chief Justice Cardozo of the New York Court of Appeals, since deceased after distinguished service as an Associate Justice of the Supreme Court of the United States, dealing with phases thereof pertinent to questions raised in the case at bar, in Doyle v. Hofstader, supra [257 N.Y. 244, 177 N.E. 494], said:

"There is no record in the books of even a single instance, or none in any event has been brought to our attention, in which a witness, claiming privilege, has been compelled to reveal a crime upon the basis of an inherent power in the inquirer to relieve him from its consequences. Many fruitful inquiries have been prosecuted without the hint of such a power in the organic resolution; we may instance the Armstrong investigation of 1905, with the report as to the business of insurance which was the outcome of its labors. See concurrent resolution of July 20, 1905, printed in N.Y. Assembly Journal, 1905, p. 1210, and N.Y. Senate Journal, 1905, p. 1126. In the few instances, none of very distant date, in which a power to confer immunity has been recited in the resolution appointing the committee, there is no record of its use. Nor may we stop with Senate and Assembly if implication once begins. The power to suspend the laws, if attributed to these, must belong to others too. Local legislative bodies, such as boards of aldermen, have implied or inherent power to conduct investigations as to matters of local government. Briggs v. Mackellar, 2 Abb. Prac. [N.Y.], 30; People ex rel. Karlin v. Culkin, supra. [248 N.Y. 465, 162 N.E.

487, 60 A.L.R. 851]. No one would be likely to assert that they have also the inherent power to give their witnesses immunity against the enforcement of the criminal law. The grand jury is an investigating body, but it has no power to pledge immunity to a witness who declines to answer. Cf. Penal Law, § 2446. So is the Appellate Division when prosecuting an inquiry as to members of the bar or judges of the inferior courts. Even the Governor is at times an inquisitorial officer, as when examining in person or by deputy into the conduct of other officers or the administration of departments. Matter of Richardson, 247 N.Y. 401, 160 N.E. 655. *If he is competent when so acting to give immunity to witnesses, the power must have its origin in the provisions of a statute.*

"The conclusion, we think, is inescapable that a power to suspend the criminal law by the tender of immunity is not an implied or inherent incident of a power to investigate. It may be necessary for fruitful results in a particular instance, but it is not so generally indispensable as to attach itself automatically to the mere power to inquire. Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the lawmaking department of the government is entitled to be heard. In the state of New York that department is not the Legislature alone, but the Legislature and the Governor, the one as much as the other an essential factor in the process. People v. Bowen, 21 N.Y. 517, 519, 521; Matter of City of Long Beach v. Public Service Commission, 249 N.Y. 480, 489, 490, 164 N.E. 553. We beg the question when we argue that the Legislature may give immunity because the Legislature is the sole custodian of the legislative power. It is not the sole custodian of that power. The power is divided between the Legislature and the Governor. Cf. [State of] Ohio ex rel. Davis v. Hildebrant, 241 U.S. 565, 36 S.Ct. 708, 60 L.Ed. 1172; Hawke v. Smith, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871, 10 A.L.R. 1504. Article 3, § 1, of the Constitution, must be read in conjunction with article 4, § 9. People v. Bowen, supra; Matter of City of Long Beach v. Public Service Commission, supra. The Legislature can initiate, but without the action of the Governor it is powerless to complete. Not only do we beg the question when we infer the validity of the immunity from the possession by the Legislature of the full legislative power; we concede by implication that, unless the legislative power has been thus committed without division, the immunity must fail. The argument, reduced to that basis, is seen to be self-destructive. The grant of an immunity is in very truth the assumption of a legislative power, and that is why the Legislature, acting alone, is incompetent to

declare it. It is the assumption of a power to annul as to individuals or classes the statutory law of crimes, to stem the course of justice, to absolve the grand jurors of the county from the performance of their duties, and the prosecuting officer from his. All these changes may be wrought through the enactment of a statute. They may be wrought in no other way while the legislative structure of our government continues what it is." (Emphasis ours.)

Associate Judge Pound, although dissenting in part on another point, was in entire agreement with other members of the court in the conclusion announced by Chief Justice Cardozo that the grant of immunity must come from the legislature. He said:

"The grant of immunity is a legislative function. The Governor may pardon after conviction (N.Y.Const. art 4, § 5), but he may not grant immunity from criminal prosecution nor may the courts. Amnesty is the determination of the legislative power that the public welfare requires the witness to speak."

The Supreme Court of Vermont in the case, Ex parte Tomassi, 104 Vt. 34, 156 A. 533, 535, dealt with the constitutional privilege against giving self criminating testimony. Shortly after its decision in the case, the opinion of the New York Court of Appeals in Doyle v. Hofstader, supra, was handed down and the opinion of Chief Justice Cardozo on the subject was so highly appraised by the Vermont Supreme Court that it caused its Chief Justice to append the following memorandum at the end of its opinion:

"Note.—After the opinions in this and the preceding case were prepared and the results announced, Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, [87 A.L.R. 418], has come to hand. In that case, Chief Justice Cardozo, in his usual masterful way, discusses the whole subject of this constitutional privilege, and reaches conclusion in harmony with our decisions on the subject. We commend this opinion to the attention of the profession in this jurisdiction."

The Supreme Court of Virginia in Temple v. Commonwealth, supra, denies the power of the court to grant immunity in the following language, to-wit:

"No implied suggestion by the court, nor any implied or positive promise by the commonwealth's attorney, could operate as an indemnity to the witness that he would not be further prosecuted. He had a right to stand upon his constitutional privilege, and not to trust to the chances of a further prosecution. The court, of course, could offer him no such indemnity. Nor could the commonwealth's attorney, for he might die, or be removed, or resign, and his successor might see fit to institute a prosecution against him. Or whether he did or not, a grand jury, without the advice or consent

of the commonwealth's attorney, might institute such prosecution. A man, having a privilege secured to him by the Constitution, cannot be required to waive that high constitutional right upon the suggestion either by the court, who had no right to make it, or by the commonwealth's attorney, who is powerless to redeem his pledge, that peradventure no prosecution would be instituted against him. He has a right to stand upon his constitutional privilege, and to remain silent whenever any question is asked him the answer to which may tend to criminate himself."

We have been unable to find decisions of the courts of any state upholding the power of the prosecuting officer and the court, either or both, to grant immunity to the witness in the absence of express constitutional or statutory authority, except certain decisions from the State of Texas. See, Camron v. State 32 Tex.Cr.R. 180, 22 S.W. 682, 40 Am.St.Rep. 763; Ex parte Greenhaw, 41 Tex.Cr.R. 278, 53 S.W. 1024; Ex parte Muncy, 72 Tex.Cr.R. 541, 163 S.W. 29; Ex parte Copeland, 91 Tex.Cr.R. 549, 240 S.W. 314. Even there certain statutes, two in particular, as construed by the court, form the basis of the power imputed to the prosecuting official and the court, to extend immunity. Neither statute purports to be one authorizing these officials to grant immunity. They are quoted in this passage from Ex parte Greenhaw, supra, viz.:

"There are but two statutes in our Code of Criminal Procedure touching this matter. Article 37 provides: 'The district or county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, which reasons shall be incorporated in the judgment of dismissal, and no case shall be dismissed without the permission of the presiding judge, who shall be satisfied that the reasons so stated are good and sufficient to authorize such dismissal.' Article 630 provides:

" 'The district or county attorney may, by permission of the court, dismiss a criminal action at any time upon complying with the requirements of article 37 of this Code.' "

We have no similar statutes, but if it be conceded that by virtue of our adoption of the common law as the rule of practice and decision in criminal cases, 1941 Comp. § 42-1101, a district attorney has the power without concurrence of the court, to enter a nolle prosequi prior to introduction of testimony by the defendant, 1941 Comp. § 42-1110, we still should be unable to see in that fact alone a legislative declaration of intent to authorize the district attorney, either with or without the court's approval, to extend immunity to a witness against self crimination.

In New Mexico there is neither constitutional nor statutory grant of power to the district attorney or the court, acting singly

or in concurrence, to extend immunity to a witness and thereby compel his testimony notwithstanding its incriminating character. Situations such as that with which the prosecution is faced in cases like the present demonstrate the crying need of appropriate enabling legislation, either in and of itself affording the immunity in question as to prosecution for all crimes in which his testimony tends to incriminate him; or, perhaps better still, authorizing the district attorney and the court, under proper safeguards, to extend immunity whenever the proper administration of the criminal law demands it. Mr. Wigmore in Volume 8 of his 3rd Edition on Evidence, page 529, § 2284, favors a general statute of immunity as against the practice in many states of enacting numerous statutes applicable only to prosecutions for particular crimes. After referring to the practice mentioned, he states:

"But, a more extensive and effective improvement would be to authorize the grant of immunity in all crimes without exception, by a single statutory section. This has already been done in Canada. Such a measure should leave to the judge's discretion, in each instance, to determine whether the immunity should be granted. With such flexibility the expedient of immunity grants would reach its maximum utility, * * *."

The legislature in New Mexico has gone no further thus far than to pass immunity statutes applicable only in prosecutions for commission of particular crimes, such as prostitution and related crimes, 1941 Comp. § 41-3413; offenses under the fish and game laws, § 43-212; at hearings under the Motor Carrier's Act before Corporation Commission, § 68-1335; or hearings under the Insurance Code before State Corporation Commission, § 60-722, L. 1947, c. 127, § 11; offenses against the gambling laws, § 41-2211, and others which might be mentioned. We know of no statute extending immunity to witnesses testifying at the trial of a defendant charged with commission of either of the offenses mentioned in the indictments before us, nor have counsel for either side cited us to any. Hence, the immunity offered the petitioners as witnesses must depend for efficacy on the authority of the district attorney and the court to extend it. Absent an enabling statute they have none as the decided cases demonstrate.

But it is insisted by counsel for respondent that because petitioners appeared before the grand jury, having been duly summoned, and then and there testified freely and voluntarily about the identical matters sought to be elicited at this trial, without claiming the privilege not to testify, after being duly advised of their rights, they thereby waived the same and can no longer insist upon the immunity claimed. But the law is against them on this proposition as well as the one just disposed of. 70 C.J. 756, § 912; 58 A.J. 82, § 99; 3 Wig-

more on Evidence (3rd Ed.) 450, § 2276(4); 3. Jones on Evidence (4th Ed.) 1657, § 890; Temple v. Commonwealth, 75 Va. 892; Duckworth v. District Court, 220 Iowa 1350, 264 N.W. 715; Ex parte Sales, 134 Cal.App. 54, 24 P.2d 916. In each of the three cases just cited, as in the case before us, the witness previously had testified before the grand jury without claiming the privilege but later asserted it at the trial. All were held entitled to claim it. The author of the text in 58 A.J. 82 states the rule as follows:

"A person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding. The privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place."

▮▮▮ It follows from what we have said that petitioners cannot be guilty of contempt in declining to accept an immunity which the district attorney and court were powerless to extend. If the result is greatly to hamper the state in pressing the charges pending against the defendant in the case on trial, it is a matter over which we have no control, however much we may feel the law should provide immunity to witnesses under the circumstances here present. Our function is to interpret and not to make the laws. We may not properly supply legislative omissions, no more so than the legislature can with propriety assume the performance of judicial functions. Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356. The dangers present if courts attempt to usurp legislative functions are expressed with such telling force by Chief Justice Cardozo in the closing words of his able opinion in Doyle v. Hofstader, supra, what we quote them, as follows:

"We are not unmindful of the public interests, of the insistent hope and need that the ways of bribers and corruptionists shall be exposed to an indignant world. Commanding as those interests are, they do not supply us with a license to palter with the truth or to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day 'because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment' (Holmes, J., in Northern Securities Co. v. United States, 193 U.S. 197, 400, 24 S.Ct. 436, 468, 48 L.Ed. 679), are not to change their form and content in response to the 'hydraulic pressure' (Holmes, J., supra) ex-

erted by great causes. A community whose judges would be willing to give it whatever law might gratify the impulse of the moment would find in the end that it had paid too high a price for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms."

But for the factor of public interest involved, having concluded the trial court erroneously assumed its approval of the district attorney's offer of immunity would secure petitioners against prosecution as a result of any self criminating testimony given, we might very well close our opinion by directing the petitioners' discharge and say no more. However, the erroneous assumption mentioned seems not to have been the only one under which the trial court and, apparently, the district attorney, as well as counsel for petitioners, have labored and still labor. Seemingly, all agree, as suggested by allegations and admissions in the petition for the writ and the amended answer upon which both sides obviously consent to have their rights determined here, that if the immunity offered be not sufficient to remove the privilege and compel testimony, then a disclosure of anything that transpired at the time and place of the two offenses charged against defendant must remain a closed book, so far as the right to secure details of same from any of petitioners be concerned. This does not necessarily follow.

Accordingly, it is apprehension on our part that the trial court in the present prosecution, as well as prosecuting officials in other cases, may feel the same way about the matter that causes us to proceed with our opinion beyond a determination of the two questions argued and already resolved.

It is an obvious mistake for either court below or counsel and, indeed, a fatal one for petitioners as witnesses, to interpret a holding by us that the privilege exists despite the proferred immunity as having the effect to seal the lips of the witnesses to all avenues of questioning about what transpired at the time and place of the offenses charged. There are certain questions, even though the privilege obtains, which the witness may not avoid answering under pretense that it affords him a shield against doing so.

The authorities seem to agree that it is unnecessary in order to invoke the privilege that the testimony which the witness declines to give is certain to subject him to prosecution, or that it will prove the whole crime, unaided by testimony from others. The test laid down by Chief Justice Cardozo in Doyle v. Hofstader, supra, reads as follows:

"It is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature

of it, will tend to a conviction when combined with proof of other circumstances which others may supply."

In Ex parte Senior, 37 Fla. 1, 19 So. 652, 655, 32 L.R.A. 133, the court spoke of the privilege, as follows:

"The privilege must be claimed in good faith, and not as a shield to defeat justice. It was held in Reg. v. Boyes, 1 Best & S. 311, that, to entitle a witness to the privilege of silence, 'the court must see from the circumstances of the case, and the nature of the evidence which he is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. Moreover, the danger to be apprehended must be real and appreciable, with reference to the ordinary operations of law in the ordinary course of things.' * * * While the witness must judge of the effect of his answer, and should not be required to explain how it will criminate him, yet the court must determine, under all the circumstances of the case, whether such will be its tendency from the question asked; and where, from the nature of the investigation and the character of the testimony sought, it reasonably appears that the answer may criminate, or tend to criminate, the witness has the right to claim his privilege, and is not bound to answer."

Here, as already indicated, each witness in turn claimed the privilege of declining to state whether he was in the town of Las Cruces in December, 1948, the month in which the respective indictments allege each offense took place. Aptly, each was asked though not pressed for an answer, whether he regarded it as a crime to be in Las Cruces during the month mentioned. Now, no right to immunity existing, either the trial court was correct in shutting off all inquiry of each witness—in clamping on the lid of silence and secrecy beyond answers to the perfunctory questions as to name, residence and occupation—or there still remains open to the prosecution a certain field of investigation to be explored by pertinent inquiries. One or the other alternative is true, necessarily.

Suppose, for instance, that time and place of the offense being the same, the charge against defendant as laid in the indictment were the capital crime of murder, instead of giving liquor to a minor, or having a female minor in his possession for evil purposes. Could it be successfully maintained that under the protection of the privilege claimed the state is to be denied any aid to the prosecution from disclosure of *every* material fact within the knowledge of any, or of all, of the three petitioners present at the scene of the crime? And this, too, notwithstanding there unquestionably are some facts within the knowledge of each witness, which by no reasonable application of the rule could be held self incriminating? If

we must give an affirmative answer to the two inquiries just put then, indeed, is prosecution for many crimes completely stymied and a mockery made of the administration of justice.

█ We do not believe this is the law and we hold it is not the law in this jurisdiction. To the extent the witness possesses knowledge of a single fact pertinent to the issues involved, the divulgence of which has no reasonable, rational tendency to connect him with the commission of a crime, the state has the right by proper questioning to develop that fact in testimony and the witness may be compelled to answer. In case the charge were murder, as we have supposed, who can doubt that each witness might be asked whether he was present at the time and place in question and witnessed a shooting and, if so, who did the shooting and who was hit? 58 A.J. 57, § 60, "Witnesses" ; Frain v. Applegate, 239 Ky. 605, 40 S.W.2d 274; Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198. While evidence of aiding and abetting the commission of a homicide may be as broad and varied as the means of communicating thought, mere presence at scene of the slaying and even approval of it, if unaccompanied by outward manifestation thereof, is insufficient. In State v. Ochoa, 41 N.M. 589, 72 P.2d 609, 615, we said:

"The evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval. State v. Wilson, supra. Mere presence, of course, and even mental approbation, if unaccompanied by outward manifestation or expression of such approval, is insufficient. Territory v. Lucero, supra [8 N.M. 543, 46 P. 18]; State v. Hernandez, 36 N. M. 35, 7 P.2d 930.

\* \* \* \* \* \*

"The accused may not be held for the independent act of another even though the same person be the victim of an assault by both. In such circumstances there is wanting that sharing of criminal intent essential to proof of aiding and abetting. Gill v. Commonwealth, supra, [235 Ky. 351, 31 S. W.2d 608]; State v. Greer, 162 N.C. 640, 78 S.E. 310."

█ We make no effort to say just what questions may, and what may not, be asked and answers thereto compelled. Indeed, it would be largely speculation on our part to anticipate the questions to be asked, or their form. What we do affirm with positiveness and, seemingly, contrary to the view entertained by all interested counsel and the trial court, a lid of secrecy is not to be clamped on so far as all inquiry into

everything that transpired at the time and place of the offenses charged. The trial judge will be called upon to say, after considering the matter from all standpoints, whether the question propounded, on its face, calls for an answer reasonably calculated or tending to incriminate the witness. The witness is not entitled to determine this matter for himself. Ex parte Senior, supra. Nor may he be compelled to state how he thinks the answer might incriminate him. The question of privilege is primarily for the trial court but for reexamination by us whenever material so to do on the hearing before us. Ex parte Tomassi, supra.

We should not close this opinion without suggesting that the state puts itself to a serious disadvantage, where a claim of privilege is likely in either of two cases pending against the same defendant, in consenting to a consolidation of the cases for trial. The nature of the crime charged necessarily has some bearing on the permissible range of inquiry open to the prosecution in the face of a claim of privilege. It may be broader in the one case than in the other. The witnesses, however, not being parties to the consolidation nor having a voice in the propriety of ordering same, are not to be prejudiced in exercising their claims of privilege by having scope of inquiry in the one case broadened to the permissible scope obtaining in the other. The result is to compel adoption for both cases the narrowest scope of inquiry applicable to either.

The conclusions reached compel us to direct the discharge of petitioners from custody.

It is so ordered.

BRICE, C. J., LUJAN and COMPTON, JJ., and ARMIJO, District Judge, concur.