# THE STATE v. DAN ELSEY, Appellant.

### Division Two, March 5, 1907.

1. **HOMICIDE: Seeking Difficulty: Prejudicial Instruction.** Where there is no evidence tending to show that the defendant sought out deceased or began the quarrel or difficulty, an instruction which tells the jury that if defendant, a night watchman, "sought or provoked the difficulty for the purpose of taking advantage of deceased and taking his life, or doing him some great bodily harm, then there is no self-defense in the case, however imminent the peril of the defendant may have become in consequence of any attack made by the deceased upon him," is prejudicial error. In this case the wife of deceased testified that defendant walked into the hotel and said to deceased, "Bill, I have got you," but that to this deceased made no reply, and it is clear from her testimony that if defendant used those words they did not provoke the difficulty, and the three disinterested witnesses did not hear them; moreover, it is plain from the evidence that deceased without any lawful or just provocation began the difficulty on account of a previous grudge or ill-feeling, and was the aggressor. *Held*, that the instruction was not authorized by the evidence, and was a practical denial of the right of self-defense.

2. ————: **Self-Defense: Instruction Not Authorized by Evidence.** Where all the evidence tends to show that when defendant shot deceased, the deceased had not only just struck him and broken one of his arms with a club, but was in the very act of striking him another blow with the same club, instructions which deny to defendant the right of self-defense "if he shot the deceased at a time when the deceased was not attempting to do him any harm, but was retreating," are not authorized by the evidence, and are erroneous and prejudicial.

3. ————: **Manslaughter: Instruction: Intentionally.** An instruction on manslaughter in the fourth degree which does not require the jury to find that the defendant intentionally shot and killed deceased, is faulty.

4. ————: ————: ————: **Malice and Premeditation.** Clauses requiring the absence of malice and premeditation and relating to the presumption which arises from the intentional use of a deadly weapon, are out of place in an instruction on manslaughter in the fourth degree.

201 Sup—36

5. ———: **No Evidence: Appellate Practice: Reversal.** Notwithstanding it is apparent that had it not been for the erroneous and misleading instructions on the subject of self-defense, no conviction would have resulted, yet if under the circumstances other criminating evidence may be produced on a retrial, the judgment will not be reversed, but the cause will be remanded with directions that if no additional or different evidence is produced the court should direct an acquittal.

Appeal from Mercer Circuit Court.—*Hon. G. W. Wanamaker,* Judge.

REVERSED AND REMANDED.

*Platt Hubbell* and *George Hubbell* for appellant.

(1) This court should reverse the judgment and discharge defendant. State v. Bartlett, 170 Mo. 658; State v. Hagan, 164 Mo. 654; State v. Packwood, 26 Mo. 340; State v. Nesenhener, 164 Mo. 461; State v. Mahan, 138 Mo. 112; State v. Brooks, 94 Mo. App. 57; State v. Huff, 161 Mo. 459; State v. Mansfield, 41 Mo. 473; State v. Primm, 98 Mo. 373; State v. Burgdorf, 53 Mo. 67; State v. Jaeger, 66 Mo. 179; State v. Castor, 93 Mo. 253; State v. Hunt, 91 Mo. 490; State v. Hahn, 189 Mo. 241; State v. Scott, 177 Mo. 673; State v. Morney, 196 Mo. 43; State v. Marshall, 47 Mo. 381; State v. Bird, 1 Mo. 585; State v. Leach, 50 Mo. 535; Morgan v. Durfee, 69 Mo. 476; State v. DeWitt, 191 Mo. 58. (2) The prosecution's sixth instruction is prejudicial error, for the reason that there is no evidence upon which to base it. State v. Gordon, 191 Mo. 114; State v. Walker, 196 Mo. 85; State v. Chambers, 87 Mo. 409; State v. Evans, 124 Mo. 410; State v. Mathews, 148 Mo. 185; State v. Bartlett, 170 Mo. 668; State v. Lockett, 168 Mo. 489; State v. Cable, 117 Mo. 385; State v. Stiltz, 97 Mo. 26. (3) The prosecution's seventh instruction is erroneous, for the reason that it does not tell the jury what constitutes manslaughter in the fourth degree. State v. McNally, 87 Mo. 658; State v. Sloan, 47 Mo.

614; State v. Branstetter, 65 Mo. 155; R. S. 1899, secs. 1833, 1834. It does not require the jury to find defendant intentionally shot and killed deceased. State v. Edwards, 70 Mo. 483; State v. Dierberger, 96 Mo. 676; State v. Lockwood, 119 Mo. 466; U. S. v. Lewis, 111 Fed. 633. It does not require the jury to find facts that would constitute manslaughter in the fourth degree. It does not define that offense. Bird v. U. S., 180 U. S. 356. (4) The court erred in giving the latter half of the prosecution's fourth instruction. It ignores the defense of self-defense, and wholly omits reasonable cause and belief on part of the defendant, and is contradictory of other instructions given upon the law of self-defense. 25 Am. and Eng. Ency. Law (2 Ed.), 259, 260, 261; State v. Harrod, 102 Mo. 612.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) The sixth instruction is criticised on the ground that there is a lack of evidence upon which to base it. There was evidence to sustain the instruction, to-wit, the testimony of Mrs. Wallace and the testimony of Roy Wallace. The defendant voluntarily appeared at the Wallace Hotel, although warned by the deceased to stay away. Previous to the difficulty deceased ordered him off the place, the wife of the deceased testifying that she pushed him out and constantly implored him to go across the line. Roy Wallace and defendant's witnesses and the defendant himself testified substantially to the same thing. Mrs. Wallace and Roy Wallace testified that as soon as the defendant caught sight of the deceased, he said, "I have got you Bill." The boy, Roy Wallace, testified that the defendant exhibited his pistol soon after he came into the hotel office. One of the defendant's witnesses, Murray Marks, testified that this boy met him on the steps upstairs

and told him that defendant had drawn his revolver. The defendant himself gave no good reason for going to the Wallace Hotel at the time of the difficulty. The facts in the case at bar, so far as this instruction is concerned, distinguish it from the case of State v. Gordon, 191 Mo. 114, and State v. Walker, 196 Mo. 73, cited by appellant. If the instruction as given did not fully cover all the law in the case, defendant should have excepted to the action of the court in failing to instruct on all the law in the case. This counsel failed to do. (2) The seventh instruction sufficiently defines ''heat of passion'' and manslaughter in the fourth degree. The court will note that, according to the record, defendant objected only to the action of the court in giving the instructions. No exception was made to the action of the court in failing to instruct on all the law in the case. The first objection made to the action of the court in failing to instruct on all the law of the case occurs in the motion for a new trial. This is not sufficient. Even if the definitions were necessary, defendant, in order to avail himself of that objection, should have called the attention of the trial court to its failure in this regard before the case was submitted to the jury. State v. Cantlin, 118 Mo. 111; State v. Paxton, 126 Mo. 515; State v. Woods, 137 Mo. 10; State v. Groves, 194 Mo. 458; State v. Sharp, 183 Mo. 715. (3) The fourth instruction could not have prejudiced defendant, because he was convicted of manslaughter in the fourth degree under another instruction. The first part of the instruction covers the self-defense feature of the case; the second part simply told the jury, that if the defendant killed deceased, when the deceased was retreating, and at a time when the deceased was making no attempt to do him any bodily harm, that then it was not a case of self-defense. The second and third instructions, given at the request of the defendant, fully covered the defendant's theory of self-defense, and under these instructions the jury could have ac-

quitted defendant if they had believed he shot deceased to save his own life. Where all the instructions taken together form a correct and harmonious announcement of the law of self-defense, there is no error, although the better method is to incorporate the entire subject-matter in one instruction. State v. McKinzie, 177 Mo. 715; State v. Johnson, 76 Mo. 121; State v. Dent, 170 Mo. 405; State v. Sharp, 183 Mo. 715.

GANTT, J.—This is an appeal from the judgment of the circuit court of Mercer county, whereby the defendant was sentenced to the penitentiary for two years for manslaughter in the fourth degree.

On September 26, 1904, the prosecuting attorney of Mercer county filed an information charging the defendant with murder in the first degree of William Wallace, on the 23rd of September, 1904. Afterwards the prosecuting attorney by and with the consent of the court, elected to prosecute the defendant for murder in the second degree, and the defendant was duly arraigned on said last-mentioned charge. The cause was tried at the December term, 1904, and resulted in a mistrial. The cause again came on for trial at the September term, 1905, and resulted in a verdict of guilty of manslaughter in the fourth degree, and assessing the punishment of the defendant at two years in the penitentiary. Motions for a new trial and in arrest of judgment were duly filed, heard and overruled and an application for an appeal to this court was allowed and the defendant admitted to bail pending this appeal. Leave was given to file a bill of exceptions and the bill was filed within the time allowed by the court.

The difficulty out of which this prosecution has grown occurred on the night of September 22, 1904, or to be more exact, about one o'clock of September 23, 1904. The testimony discloses that on the 22d of September, 1904, the defendant and the deceased lived at the town of Lineville, on the border line between Mis-

souri and Iowa, situated partly in Mercer county, Missouri, and partly in Iowa. The defendant Elsey was marshal of the town of Lineville, and was employed as a patrol or private watchman by citizens of the town of Lineville, in Missouri. On the 22nd of September; 1904, the deceased, William Wallace, had gone to the town of Princeton, the county seat of Mercer county, and some ten miles south of Lineville, with his wife and children to attend a reunion, and returned home that night on a train which arrived in Lineville about one o'clock in the morning. The defendant Elsey was at the depot when the train arrived and followed along behind the deceased and his family and two traveling men as they walked up to the Wallace Hotel, which was at that time in the possession of and under the management of a Mr. Workman, a son-in-law of the deceased Wallace. The evidence was conflicting as to whether the defendant was intoxicated that night. Some of the witnesses for the defendant were of the opinion that he had been drinking to some extent, whereas others said he did not act like he was intoxicated. When the train from Princeton reached Lineville that night, Murray Marks, a commercial traveler, got off of the train, and seeing the defendant, Elsey, on the platform, inquired of him about the hotels; defendant told Marks that there was one hotel south of the depot and one north of the depot. According to Marks' testimony, defendant made no effort to induce Marks to go to one hotel or the other, but simply pointed them both out. While Marks and Elsey, the defendant, were talking about the hotels, an acquaintance of Marks', a Mr. Dobbins, walked up, and about the same time, the deceased, Mr. Wallace, said, "Come with me and I will show you the hotel," and Dobbins also said to Marks, "Go with this man," meaning Mr. Wallace, the deceased. After reaching the hotel and arousing the landlord, the testimony is conflicting as to what occurred in the office of the hotel. According to Mrs. Wallace's evidence, the

deceased and his family occupied the first house south of the hotel, and after they had aroused the landlord so as to let the traveling men into the hotel, Mrs. Wallace said, ''Let's go home,'' referring to this little house, and about that time, the deceased told Workman that Elsey, the defendant, had tried to get Marks to go to the other hotel. Soon after Cottingham, another guest, walked into the office of the hotel, and just after him the defendant, Elsey. When Elsey got inside of the office he said good evening to Mrs. Wallace, and she returned the salutation. According to her testimony the first thing that then occurred was a remark by the defendant to the deceased, ''Bill, I have got you.'' To this the deceased, Wallace, made no reply. After the traveling men went upstairs, deceased turned to defendant and said, ''Have I not forbid you ever coming on my property? Why don't you stay off?'' Whereupon the deceased said, ''You came here for a fight, and if you did, throw down your club and take off your gun.'' As deceased said this, he took off his coat and went up to defendant, grabbed the club and took it away from the defendant; whereupon Mrs. Wallace ran between them and tried to push defendant out of the room and pleaded with him to leave the hotel and according to her evidence, Elsey, the defendant, retreated from the hotel out into the street in a northeasterly direction away from the Wallace hotel. While Mrs. Wallace was pushing and insisting upon Elsey, the defendant, leaving, the evidence tended to show that Workman was holding the deceased Wallace to keep him from getting to the defendant, but the deceased broke loose from Workman. The deceased told his wife to go away or she would get hurt, and she answered by telling the deceased to run, that the defendant was going to shoot, and the defendant did shoot the deceased when the latter got about ten or twelve feet from defendant, and followed up the first shot by three more shots. While none of the State's wit-

nesses saw the deceased strike the defendant, Workman did hear something crack or pop, and it afterwards developed that deceased had struck and broken the defendant's forearm with a stick or club, which he had taken from the defendant in the hotel. On the part of the State the evidence further tended to show ill-feeling between the defendant and the deceased, and that each had made threats against the other and said he could whip the other.

On the part of the defendant the evidence tended to show that when the defendant went into the office of the hotel that night, deceased asked him what he was doing there and charged him with trying to get the customers to go to the other hotel, and said to the defendant to take off his gun and he would fight him anywhere, and applied the vilest epithet, and pulled off his coat preparatory to fighting him. The evidence on the part of the defendant tended further to show that defendant did not say to the deceased, "Bill, I have got you," but that the deceased did shake his fist in the face of the defendant, but defendant did not resent anything the deceased said to him. Mrs. Wallace told the defendant to go off of the premises; that the deceased came up close to the defendant and shook his fist in his face and jerked defendant's club out of his hand and at this point Mr. Workman separated them, and the defendant backed out of the door into the street; that the deceased broke loose from Workman and followed the defendant out in the street, cursing and abusing him, and finally struck him with a club breaking the ulna bone of defendant's arm, and was in the act of striking the defendant a second time when the defendant fired to protect himself. The ball from the defendant's pistol entered the body of the deceased just below the left arm pit and came out on the other side nearly opposite, without striking any portion of the vest on either side. From the effects of this shot the deceased died within a few minutes.

The court instructed the jury on murder in the second degree and on manslaughter in the fourth degree. The objections and exceptions to the instructions given by the court, and to the refusal of the court to give others asked by the defendant, will be discussed in the course of the opinion.

I. From the foregoing statement it is obvious that the difficulty in which the deceased lost his life was of short duration and the controlling facts disclosed by the testimony are practically uncontradicted. Among other instructions the court of its own motion gave the following one numbered six:

"The court further instructs the jury that a person cannot seek for, begin, or bring on a quarrel or difficulty for the purpose of wreaking his malice or taking advantage of another and taking his life, or doing him some great bodily harm and then escape punishment on the ground of self-defense, and in this case if the defendant sought or provoked the difficulty for the purpose of taking advantage of deceased and taking his life, or doing him some great bodily harm, then there is no self-defense in the case, and this, too, however imminent the peril of the defendant may have become in consequence of any attack made by the deceased upon him."

The defendant complains of this instruction for the reason that there is no evidence tending to show that the defendant sought or began the quarrel or difficulty with the deceased either with or without a felonious intent. We have carefully read all the testimony in this case and we have been unable to find any testimony which would justify the giving of this instruction, and it goes without saying that it was highly prejudicial in the circumstances of the case. Conceding that it was the province of the jury to believe Mrs. Wallace as to the alleged statement of the defendant when he came into the office of the hotel that night, notwithstanding neither of the disinterested witnesses, Marks or Cot-

tingham or the son-in-law Workman, who had equal
opportunity to hear such a statement, heard it if it was
in fact made, it is apparent from her own statement
that her husband either did not hear this statement of
the defendant, or if he did, was not provoked by it to
enter into a difficulty with the defendant, because she
says that after the defendant made this remark, her
husband "kind of threw his head around over his shoul-
der and looked and went on talking to the traveling
man again." Moreover, the testimony of Mrs. Wal-
lace as to the subsequent conduct of her husband, the
deceased, plainly indicates that the deceased had not
been provoked by the alleged statement, but his con-
duct was referable to the presence of the deceased at the
hotel office in defiance of his previous orders forbidding
the defendant to come on his premises. It is too plain,
we think, for discussion, that the deceased without any
lawful or just provocation began the difficulty on ac-
count of some previous grudge or ill-feeling, or of some
fancied wrong which he attributed to the defendant in
endeavoring to get the customer to go to the other ho-
tel, and that he was not only the aggressor, but that
he was very violent in his denunciation of defendant,
and that he purposed to make an actual assault, was
evidenced by the fact that he threw off his coat and
grabbed the defendant's cane or club, and was only pre-
vented from striking the defendant by the joint efforts
of his son-in-law, Mr. Workman, and those of his wife.
At the earnest solicitude of Mrs. Wallace, the defend-
ant did leave the hotel and retreated from the deceased
until the latter broke loose from Mr. Workman and
caught up with the defendant near the middle of the
street and struck him with such force as to break his
forearm, and was in the act of striking the second time
with the uplifted club, when the defendant drew his
revolver and shot him. When it is considered that the
testimony of the defendant shows that he did not know
that the deceased was in the hotel that night when he

stepped into the office, and the fact disclosed by the record that the defendant was at that time employed by the deceased and other citizens of Lineville to watch their premises at night, the presence of the defendant at the hotel cannot be construed as a menace, or as justifying the violent conduct of the deceased toward him at that time. This court has often ruled that however proper an instruction may be as an abstract proposition of law, it is error to give it when the facts in evidence do not justify it. [State v. Gordon, 191 Mo. 114.]

This instruction given in this case together with the fourth and fifth instructions constitutes a practical denial of the right of self-defense and was, in our opinion, exceedingly harmful and erroneous. There was no evidence in the case tending to show that the defendant brought on the difficulty or that he was the aggressor, and hence this instruction numbered six was reversible error.

Neither do we find any facts in the evidence which would have justified so much of instructions four and five, which denied the defendant the right of self-defense, if he shot the deceased at a time when the deceased was not attempting to do him any harm, but was retreating. All the evidence in the case tends to show that when the defendant shot the deceased, the deceased had not only just struck and broken one of his arms with the club, but was in the very act of striking him another blow with the same club. The instructions are not only not founded upon the evidence, but are in direct conflict with it. The defendant was entitled to have the law of self-defense fairly and fully presented to the jury as explained to them in the second and third instructions given to them for the defendant without having the same neutralized and destroyed by the fourth and fifth and sixth instructions given by the court.

II. The court in this seventh instruction defined manslaughter in the fourth degree as follows: "If the

defendant shot and killed the deceased while in the heat of passion aroused by the striking of him with a stick produced in evidence, and without malice or premeditation as in these instructions previously defined and not in necessary self-defense, then he is guilty of manslaughter in the fourth degree and the jury should so find.'' This instruction is faulty in that it does not require the jury to find that the defendant intentionally shot and killed deceased. [State v. Umfried, 76 Mo. 404; State v. McKenzie, 177 Mo. l. c. 712; State v. Todd, 194 Mo. 396.] With this amendment so much of this instruction as deals with the essentials of manslaughter would be correct. All that portion of it relating to malice and premeditation and the presumption arising from the intentional use of a deadly weapon was out of place. It had already been said in the other instructions and its only effect in this connection was to prevent a verdict of manslaughter.

III. We are urged to reverse the judgment and discharge the defendant. This should be done when it is apparent that no other or different evidence can or will reasonably be produced to sustain a conviction. We are of the opinion that but for the erroneous and misleading instructions in this case, no conviction would have resulted. It may be, however, that the State can produce other criminating evidence. Our conclusion is that for the errors noted, the judgment must be and is reversed and the cause remanded for a new trial. If on another trial, if it is deemed advisable to try it again, no additional or different evidence than that before us shall be produced, the circuit court should direct an acquittal of defendant on the ground of self-defense. Judgment reversed and cause remanded.

*Fox, P. J.,* and *Burgess, J.,* concur.