# STATE OF MISSOURI, Respondent, v. ROSCOE FRASER, Appellant.

### Springfield Court of Appeals, February 5, 1912.

1. **LOCAL OPTION LAW VIOLATIONS: Unlawful Delivery of Liquor: Sufficiency of Evidence.** Defendant was prosecuted and convicted for unlawfully delivering intoxicating liquors in a county in which the Local Option Law was in force. The evidence is examined and *held* sufficient to justify the jury in finding defendant guilty as charged, and that no material error was committed in the giving or refusing of instructions. GRAY, J., dissents and holds that the verdict was based upon an instruction covering the question of delivery, to support which there was no evidence.

2. **EVIDENCE: Admissions: Effect of Subsequent Qualifications.** When an admission against interest is offered in evidence, the whole statement must be considered together, but the triers of the fact are at liberty to give credence to the statements which are against the interest of the declarant and it does not follow that after an admission has once been shown to be made, that a subsequent qualification will annul the force of the previous admission.

3. **EVIDENCE: Jury: Province of Jury.** It is for the jury to reconcile conflicting evidence and draw a proper conclusion.

4. **LOCAL OPTION LAW VIOLATIONS: Unlawful Delivery of Liquor: Failure to Define "Delivery."** In a prosecution of defendant for violating the Local Option Law by unlawfully

delivering intoxicating liquors in a county where such law was in force, it was *held* not error for the court, in the absence of a request to that effect by the defendant, to fail to give a definition of the word "delivery."

5. ————: **Information.** It is not error for an information to charge in one count the keeping, storing and delivering of intoxicating liquors.

6. **INFORMATION: Verification: Verification Dated Subsequent to Filing Information.** A verification to an information was dated the day following the filing thereof, but there was no evidence in the record to show that it was not verified when filed. There was no objection made to the information on this ground in the trial court and there was nothing to show but what it was simply a clerical error. *Held*, that the error would not justify a reversal of the judgment.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Wm. P. Elmer* and *J. D. Gustin* for appellant.

(1)   The second count charged acts constituting different offences. They may be so charged in separate counts, if the acts charged are not repugnant, but not in the same count. State v. Nichols, 124 Mo. App. 330; State v. Fox, 148 Mo. 517; State v. Blakely, 184 Mo. 187. (2)   The information charged "keeping, storing for and delivering to" the witness Mattison. The acts of keeping and storing for the inconsistent with "delivering to" and cannot be charged in the same count. Kelley's Criminal Law, p. 121, sec. 201. (3)   The information should negative defendant's right to sell intoxicating liquor as a dramshop keeper or wholesaler. An allegation that the Local Option Law is and has been in force for several years does not supply the omission. An indictment for violating the Local Option Law must negative a licensee's right. A wholesaler or dramshop keeper could not be convicted of selling, storing or delivering in local op-

tion counties while their licenses are in force. A druggist has the right to sell, under certain conditions, in local option territory, implying the right to keep store and deliver. State v. Baker, 71 Mo. 475; State v. Tissing, 74 Mo. 72; State v. Braun, 83 Mo. 480. (4) The information was not verified until the day after it was filed. This could not be done without leave of court and none was obtained. State v. Gutke, 188 Mo. 424; R. S. 1909, sec. 5061. (5) The words, ''keep, store, deliver,'' are used in their legal sense and in connection with the purpose and intent of the Local Option Law to prohibit the illegal sale of intoxicating liquors. 4 Words and Phrases, 3914; 7 Words and Phrases, 6675. (6) The Act of 1907 is directed against keepers of order houses and designed to prevent violations of the Local Option Law. The cases cited below fully explain it. The act is auxiliary to the Local Option Law. State v. Price, 229 Mo. 670, 129 S. W. 650; State v. Buehler, 148 Mo. App. 615; State v. Clow, 131 Mo. App. 548.

*L. T. McGee,* Prosecuting Attorney, and *Eugene W. Bennett,* Assistant Prosecuting Attorney, for respondent.

(1) The information is valid and sufficient and concisely presents the charge under the statute. R. S. 1909, sec. 7227; State v. Price, 229 Mo. 670; State v. Rawlings, 134 S. W. 530. (2) The information is not bad for duplicity because it charged ''keep and store for and deliver to.'' And certainly there can be no complaint as the court withdrew from the consideration of the jury the question ''keep and store'' and instructed alone on ''deliver.'' State v. Fletcher, 18 Mo. 425; State v. Myers, 20 Mo. 411; State v. Heinze, 45 Mo. App. 410; State v. Pittman, 76 Mo. 56; State v. Cannon, 134 S. W. 513; State v. Rawlings, 134 S. W. 530; State v. Hogle, 137 S. W. 21. (3) There was

no motion or request for the state to elect on which charge it would proceed, whether for "keeping" "storing," or "delivering" and such objection cannot be raised for first time on appeal. State v. Fox, 148 Mo. 517; State v. Blakely, 184 Mo. 190; State v. Harding, 184 Mo. 190; State v. Hartzell, 184 Mo. 191; State v. Cannon, 134 S. W. 513. (4) Where the information uses the words "keep and store for" and "deliver" and defendant is convicted for "delivering" the words "keep and store for" will be treated as surplusage. R. S. 1909,, sec. 5115; State v. Rawlings, 134 S. W. 530. (5) The information is sufficient against the attack "that the information should negative defendants right to sell intoxicating liquor as a dramshop keeper or wholesaler." The information need not negative exceptions in other clauses or other sections of the statute which create defenses and as the exceptions complained of are contained in a different section they need not be negatived. State v. Buford, 10 Mo. 704; State v. Meek, 70 Mo. 355; State v. O'Brien, 74 Mo. 549; State v. Brockstruck, 136 Mo. 351; State v. Price, 229 Mo. 682. (6) The fact that the verification to the information is shown to be the day following the filing is but a clerical error and appellant waived any such defect by not calling the attention of the trial court to the same by motion to quash, and besides, even the mission to verify an information is simply an irregularity which does not render it or the proceedings under it void and if no objection is made on or before the trial that the information is not supported by affidavit or not verified, that objection is waived and cannot be made on appeal. R. S. 1909, sec. 5115; State v. Schnettler, 181 Mo. 173; State v. Brown, 181 Mo. 192; State v. Runzi, 105 Mo. App. 319; State v. Sharpe, 119 Mo. App. 386.

NIXON, P. J.—The defendant was tried in the circuit court of Dent county upon an information containing two counts, the first, the offense of selling intoxicating liquors in violation of the Local Option Law, and the second with unlawfully delivering intoxicating liquors in a county in which the Local Option Law was in force. He was acquitted on the first count, but convicted on the second, and has appealed to this court.

Roy Mattison testified for the state that he was in the city of Salem in Dent county on the 4th day of April, 1911, and met the defendant with whom he was acquainted; that he got three pints of whiskey—two of them from the defendant at different times; that the first time, Fraser delivered the whiskey in the front room of Sam Fraser's music store in Salem while Sam was on the outside; that at this time—about eight or nine o'clock in the morning—the boys were hiding behind an organ, and that the defendant at this time took a bottle out of his pocket and delivered it to him. He testified that the second pint of whiskey was given to him by the defendant afterwards while they were in the back room of the same store hiding behind the partition; that this was about three or four hours after he got the first pint of whiskey. Nothing is said as to whether defendant went out and got this second bottle of whiskey or whether he sent for it by some other person. Charles Goldsmith, another witness for the state, testified that they went to Beeler's restaurant where they drank a pint of whiskey; that this was long after the time the defendant gave the first pint of whiskey to Mattison; that it was along about dinner time that Ross and Mattison went into the back room of the music store; that they went up to Beeler's a little while after Fraser gave Mattison the whiskey, and that Ross came in there; that Mattison had the whiskey at that time, but that Ross did bring some

161 App.—22

whiskey in about one or two o'clock at Beeler's. Fraser, the defendant, testified that he had but little acquaintance with Mattison. He stated that he gave Dink Ross money to buy some whiskey. "Q. How did this conversation come up about whiskey, with Mattison? A. He asked me if I could do anything. Q. What did you tell him? A. I told him I didn't know whether I could or not. Q. You knew you couldn't, didn't you? A. Not at this time, no, sir. Q. What did you say to him about it? A. I told him I might try. Q. What did you do then? A. He gave me six-bits and I went out and tried. Q. Where did you go to? A. I went outside. Q. Where to? A. I met Dink Ross and gave the money to him. Q. Where did you meet Dink Ross? A. Out on the street. Q. Whereabouts on the street? A. Well, it was along about Beeler's. Q. Where did Dink go to? A. I don't know where he went. Q. Did he bring back whiskey? A. Yes, sir. Q. Where did he bring this whiskey back to? A. Me. Q. Yes? A. Up at Beeler's. Q. Bring it to Beeler's? A. Yes, sir. Q. Did you stay and watch for him to bring it back? A. No, sir. Mattison and I and this other fellow went up there. Q. You gave it to Mattison *at* Beeler's? A. No, sir. Q. Where did you give it to him? A. I gave it to him *in* Beeler's." Later on, in his testimony: "Q. How come Dink to come back to Beeler's restaurant? A. Well, I told him I would meet him there." Again: "Q. Dink gave this whiskey to you, did he? A. I don't know whether he did or not; I don't remember whether Mattison took hold of it first, or me. Q. You don't remember whether you gave it to him or not? A. No, sir! just like a crowd around drinking; I would not swear that I got it and gave it to Mattison or Mattison reached and got it."

From the defendant's own admissions, as will be seen, he first stated that he did not deliver the bottle of whiskey to Mattison *at* Beeler's but *in* Beeler's.

After he had been further examined, when the question was again brought to his consideration, he qualified his first statement by expressing a doubt, or uncertainty, as to whether he delivered the bottle of whiskey to Mattison or Mattison reached and got it. It is a well-established rule that when an admission against interest is offered in evidence the whole statement must be considered together, but the triers of the fact are at liberty to give credence to the statements which are against the interests of the declarant, and it does not follow that after an admission has once been shown to have been made that a subsequent qualification will annul the probative force of the previous admission. That is a question for the jury to take into consideration and ascertain whether under all the circumstances in the case what he said in favor of himself was true or untrue, but the presumption is that what he said against himself is true because said against his own interest. As to whether defendant's first statement of the transaction as to delivery to Mattison was true, or the last one when his memory failed him, was a question of fact peculiarly within the province of the jury when considered in the light of all the facts and circumstances in evidence. It is for the jury, who look into the face of the witness and observe its varying changes while testifying, and who read with the eye his muscular speech while listening with the ear to his oral expressions, to reconcile conflicting evidence and draw proper conclusions.

The fourth and fifth instructions given for the state are as follows:

"4. If, however, the defendant Fraser did not have possession and control of the whiskey at the time, but the witness gave the defendant the money and asked defendant to get him some whiskey, and if defendant took the money and went and got the whiskey from some other person and brought it back and delivered it to the witness Mattison, these facts would not con-

stitute a sale of the whiskey by the defendant, but would constitute a delivery, as charged in the second count of the information.''

''5. If you do not find that the defendant sold to the witness Mattison the whiskey as charged in the first count of the information, but if you do find from the evidence that the defendant, in Dent county, Missouri, on the 4th day of April, 1911, did deliver to the said Roy Mattison one pint of whiskey, you will find the defendant guilty as charged in the second count of the information, and assess his punishment at a fine of not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for a term of not less than six nor more than twelve months, or by both such fine and imprisonment, but in such case, he should be acquitted on the first count.''

The following instructions were given for the defendant:

''1. If the defendant did not have possession and control of the whiskey at the time, but the witness Mattison gave him the money and asked the defendant to get some whiskey for him, and if the defendant gave the money to one Dink Ross and if Ross delivered the whiskey to the witness Mattison, such facts would neither constitute a sale or delivery of the whiskey by the defendant to Mattison, and the defendant should be found not guilty on both counts.''

''3. Although you may believe from the evidence that the defendant received seventy-five cents from the witness Mattison with which to purchase intoxicating liquors, yet if the defendant gave that money to Dink Ross and said Dink Ross brought the whiskey to the defendant and the witnesses Mattison and Goldsmith, and all of them drank the whiskey together, then there would not be a sale by the defendant to the witness Mattison, nor would it constitute a delivery by the defendant to the witness Mattison.''

Objection is made to instruction numbered four (above) because there is no evidence that defendant, after he had gone out and got the whiskey from some other person, "brought it back and delivered it to the witness Mattison. The defendant's guilt was made to depend, in the instructions, upon his having delivered the bottle of whiskey to Mattison and not upon the immaterial detail of who brought it back. By the fourth instruction the court undertook to aid the jury in distinguishing what facts would constitute a delivery and what facts would constitute a sale. The necessity of a "delivery" of the bottle of whiskey by defendant to Mattison is clearly stated in the fifth instruction given for the state and in the first and third instructions given for the defendant. It is not conceivable that the jury could have misunderstood the meaning of the instructions as to delivery. Nor do we think it was error for the court, in the absence of a request to that effect by the defendant, to fail to give a definition of a word in such common, every-day use as "delivery." The word "deliver," used in the information and instructions, is not used in a technical or symbolical sense, but in the usual sense of "handing over," and would be as readily understood by a jury of plain men as by the learned judge. Its definition would have required the employment of other words no better understood by the jury than the word sought to be defined, and the result would have been that the definition would have needed defining.

Under all the evidence in the case we think the jury was fully justified in finding the defendant guilty as charged, and that no material error was committed in the giving or refusing of instructions.

The information is assailed on the ground that it charged the defendant with storing and keeping for and delivering to the witness, Mattison. It is claimed that storing and keeping are separate offenses from delivering, and that they cannot be joined in one count.

This objection is decided against appellant under the authority of State v. Burns (Mo. Sup.), 140 S. W. 871.

The verification to the information is dated the day following the filing of the information. It is not plain and there is no evidence in the record to show it was not verified when filed. There was no objection made to the information on this ground in the trial court, and in any event, there is nothing to show but what it was simply a clerical error.

The judgment is affirmed. *Cox, J.*, concurs. *Gray, J.*, files separate dissenting opinion.

## DISSENTING OPINION.

GRAY, J.—I am inclined to believe that as a rule a dissenting opinion is an unnecessary incumbrance of the record. In this case, however, I fully agree with all the legal propositions announced in the majority opinion, and by merely dissenting without giving my reasons therefor, would impliedly place me as dissenting from the opinion of my brothers as to the law, when I am in full accord with all they say relating thereto. In other words, I dissent on account of things not said, instead of things said. I believe the majority opinion entirely ignores the main point relied on for reversal.

The defendant was prosecuted on two separate counts, and for two separate offenses. The first count charged that he had unlawfully sold intoxicating liquors, while the second charged an offense under section 7227 of the Revised Statutes of 1909, which reads as follows: "No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatsoever."

In behalf of the state the witnesses testified to an outright sale. The witnesses were Roy Mattison and Charley Goldsmith, and they testified that on the

4th day of April, 1911, they purchased from the defendant, in his father's store at Salem, two half pints of whiskey which the defendant then and there had in his possession and delivered to them. One of the witnesses testified that after they purchased the whiskey they went with the defendant to a place known as Beeler's restaurant where they drank one bottle of it. This was the evidence on the part of the state, and all there was relating to the defendant's guilt.

The defendant testified in his own behalf, and denied that he sold either of the state's witnesses any whiskey, or delivered any whiskey to either of them at his father's store. The witness testified that Mattison and Goldsmith came to the store; that he was acquainted with them prior thereto; that Mattison asked him if he knew where he could get some whiskey, and he told him he did not know but would try; that Mattison gave him seventy-five cents and he went out on the street and met one Dink Ross and gave him the money and told Ross to meet him at the restaurant; that he with Mattison and Goldsmith, went to the restaurant and Ross returned with the whiskey, and they all drank it. The witness was asked the following questions relating to what took place at Beeler's: "Q. Did Dink bring back the whiskey? A. Yes, sir. Q. Where did he bring this whiskey to? A. Me? Q. Yes? A. Up to Beeler's. Q. You gave it to Mattison at Beeler's? A. No, sir. Q. Where did you give it to him? A. I give it to him in Beeler's. Q. Dink gave this whiskey to you, did he? A. I don't know whether he did or not; I don't remember whether Mattison took hold of it first, or me. Q. You don't remember whether you gave it to him or not? A. No, sir; just like a crowd around drinking; I would not swear that I got it and gave it to Mattison or Mattison reached and got it."

With this testimony, the defendant rested, and the state still maintaining that the whiskey consumed

at the restaurant had been purchased from the defendant at his father's store, offered Dink Ross as a witness, who testified that he did not buy any whiskey for the defendant, and that he did not deliver any whiskey to any one at the restaurant. The state again called Charles Goldsmith, and he denied that Ross brought any whiskey to the defendant at the restaurant, but said that Ross did bring a pint of whiskey to him.

The evidence discloses that Mattison and Goldsmith, who furnished the state's testimony, were confined in the county jail for larceny at the time they testified; that on the 4th of April they stole some bicycles at Salem, and left for parts unknown; that they were overtaken by the officers and arrested, and they testified that they had another pint of whiskey in addition to what they testified they got from the defendant. This testimony corroborated the testimony of Goldsmith that Ross did bring a pint of whiskey to him at the restaurant.

In behalf of the state the jury were told if the defendant had possession and control of the whiskey and handed it to the prosecuting witness on receipt of the money paid by the latter, then such facts constituted a sale, and the jury should convict the defendant on the first count in the information; and then the instruction proceeded: "If however the defendant Fraser did not have possession and control of the whiskey at the time, but the witness gave the defendant the money and asked defendant to get him some whiskey, and if defendant took the money and went and got the whiskey from some other person and brought it back and delivered it to the witness Mattison, these facts could not constitute a sale of the whiskey by defendant, but would constitute a delivery as charged in the second count in the information."

By this instruction the jury were told that if the defendant had the whiskey in his possession and de-

livered it to the witness on receipt of the money, he was guilty on the first count of the information. But if he did not have the whiskey in his possession, but took the money and went and got the whiskey from some other person and brought it back and delivered it to the witness, Mattison, then such facts would not constitute a sale, but would constitute a delivery, and to convict him under the second count.

Now there was not a word of testimony from any witness that the defendant took the money at his father's store and went out and got the whiskey from any person and brought it back and delivered it to the witness, Mattison. In his assignment of errors, the appellant complained of the action of the court in giving this instruction, and puts his assignment of error in plain language, as follows: "There was a total lack of evidence to support this fourth instruction. No witness testified to any fact tending to show the defendant 'went and got the whiskey from some other person and brought it back and delivered it to Mattison.'"

Again in his printed argument has the appellant attacked this instruction in the following language: "The instruction assumed a state of facts not shown by the testimony, and the jury was misled thereby, evidently assuming that, although they could not find it themselves, there must be some evidence to support the instruction or the court would not have given it." When it is conceded, as it must be, that there was no evidence in the case upon which to base this instruction, then it must be conceded that it was error to give it, and the only question remaining is, was it harmful error of such a nature as to require a reversal of the judgment?

In my judgment, this is the only error in the case, and I have written this dissenting opinion because the majority opinion entirely ignores it. I think when an appellant has plainly raised a question in his brief,

an opinion that does not dispose of it is not an opinion disposing of the whole case. The majority opinion says that there was testimony given by the defendant which tended to prove a delivery. This, I admit to be true, and if his evidence had been submitted under a proper instruction, the appellant would have no right to complain; but in my judgment, all the testimony that the majority opinion sets out as being sufficient to authorize a jury to find a delivery, was withdrawn by the court in an instruction. In other words, the trial court was of the opinion that the testimony of the defendant, if true, was a complete defense to both counts. In his behalf the court gave the following instruction: "Although you may believe from the evidence that the defendant received seventy-five cents from the witness Mattison with which to purchase intoxicating liquors, yet if the defendant gave that money to Dink Ross and the said Dink Ross brought the whiskey to the defendant and the witnesses Mattison and Goldsmith, and all of them drank the whiskey together, then there would not be a sale by the defendant to the witness Mattison, nor would it constitute a delivery by the defendant to the witness Mattison."

By this instruction the court took away from the jury all right to convict the defendant for anything that took place at the restaurant, and therefore, the testimony which the majority opinion finds was sufficient to sustain the verdict, was practically excluded by an instruction of the court. This being true, on what evidence is the verdict based? It is not strange the jury refused to believe the state's witnesses, who testified to the transaction with the defendant. They were self-confessed thieves, and the jury had a right to believe the defendant's evidence as against their's. The jury acquitted the defendant of a sale, and thereby showed that they did not believe a word of the state's testimony. The court took away from the jury the defendant's testimony, so far as it au-

thorized a conviction on either count, and therefore, this verdict is absolutely without evidence to support it.

That is is the established practice, both in civil and criminal cases, that it is error to give instructions which are not predicated on the evidence, must be conceded. [State v. Thompson, 83 Mo. 257; State v. McKinzie, 102 Mo. 620, 15 S. W. 149; State v. Elsey, 201 Mo. 561, 100 S. W. 11; Chambers v. Railroad, 111 Mo. App. 609, 86 S. W. 501.]

In State v. Thompson, supra, the defendant was indicted for murder, and he stood on a plea of self-defense. In behalf of the state the court included in an instruction the following language: "If the defendant invited the deceased out of the house to settle a difficulty with him, or to advise him how he should act, etc." In holding this instruction erroneous, on account of including these words, the court said: "The 7th instruction on the part of the state we regard as erroneous. It does not appear in evidence that defendant invited Powell out of the house to settle a difficulty with him, or indeed what his purpose was."

In Chambers v. Railroad, supra, the court included in an instruction, a matter about which there was no evidence. Reversing the case for this error, the court said: "The nature of the evidence was such that the jury finding the instruction, quoted above, given for their direction, might well conclude that the court believed the evidence on the subject of obstructions in the pipe tended to support the hypothesis submitted in the instruction. It was harmful error for which the judgment must be reversed and the cause remanded."

In my judgment, the verdict in this case was based upon the fourth instruction, and as there was no evidence to support that part of the instruction, it was material error to give it, for which the judgment should be reversed.